[No. 26038-1-III.   Division Three.   June 26, 2008.]

STEVENS COUNTY, *Appellant*, v. FUTUREWISE, *Respondent*.

496

*Peter G. Scott* (of *Gough, Shanahan, Johnson & Waterman*), for appellant.

*Keith P. Scully* (of *Gendler & Mann, LLP*); *Michael D. Pierson* (of *Riddell Williams, PS*); and *Brock Howell*, for respondent.

*Brian T. Hodges* on behalf of Pacific Legal Foundation, amicus curiae.

¶1 KULIK, A.C.J. — Stevens County Code (SCC) 13.10-.034(3)(C) establishes protections for "critical habitat," defined as "only those areas designated by a state or federal agency through a formal statutory or rule-making process for endangered, threatened, or sensitive species." Futurewise, a citizens' group, filed a petition with the Eastern Washington Growth Management Hearings Board (Board) claiming that the above code section violates the Growth Management Act (GMA), chapter 36.70A RCW, because it fails to protect the habitats of endangered, threatened, or sensitive species. Concluding that Stevens County had not complied with the GMA, the Board ordered the county to amend SCC 13.10.034. The Board's final decision and order was affirmed by the Stevens County Superior Court.

¶2 On appeal to this court, Stevens County contends Futurewise's petition should have been barred under the equitable doctrines of res judicata, collateral estoppel, or virtual representation. Substantively, the county argues that the Board does not give due deference to the county's discretion in land use planning under the GMA and that the Board's findings are not supported by substantial evidence. We conclude that Futurewise's petition is not barred and that the Board correctly decided that SCC 13.10.034(3)(C) does not comply with the GMA. Accordingly, we affirm.

## FACTS

¶3 The Washington Legislature enacted the GMA in 1990 to combat "uncoordinated and unplanned growth" and to promote cooperation among local governments and citizens in comprehensive land use planning. RCW 36.70A-.010. Included in the GMA's planning goals is the conservation of fish and wildlife habitat. RCW 36.70A.020(9). To that end, counties and cities are required to designate and protect "critical areas," defined as wetlands, recharge areas for aquifers, areas of frequent flooding, geologically hazardous areas, and fish and wildlife conservation areas. RCW 36.70A.030(5), .170; *see Swinomish Indian Tribal Cmty. v. W. Wash. Growth Mgmt. Hearings Bd.*, 161 Wn.2d 415, 421, 166 P.3d 1198 (2007). Counties and cities are directed to "include the best available science in developing policies and development regulations to protect the functions and values of critical areas." RCW 36.70A.172(1). Three regional boards review compliance with the GMA by cities and counties located in the boards' jurisdictional boundaries. *Swinomish Tribal Cmty.*, 161 Wn.2d at 421 (citing RCW 36.70A.250-.350). The Board reviews Stevens County's compliance with the GMA.

¶4 In March 2003, Stevens County adopted a Critical Areas Ordinance, codified in Title 13 SCC. One purpose of Title 13 SCC was to comply with the mandate of the GMA by providing reasonable and effective regulations to "conserve, protect and maintain the functions and values of regulated critical areas," including fish and wildlife conservation areas. SCC 13.00.020. Another purpose of the ordinance was to classify and designate the county's critical areas. SCC 13.00.020.

¶5 County resident Jeanie Wagenman (representing Larson Beach Neighbors) and the citizens group called "1000 Friends of Washington" participated in the process of adopting the ordinance. "1000 Friends" is now known as Futurewise. In May 2003, Ms. Wagenman filed a petition

for review of Title 13 with the Board, which later consolidated it with two other petitions under case no. 03-1-0006c. 1000 Friends/Futurewise did not join in any of the petitions.

¶6 In February 2004, the Board found Title 13 to be noncompliant with the GMA and ordered that Title 13 be amended to address, in part, public participation in its development. The county then proposed amendments to Title 13 in Resolution 80-2004. The last public hearing on Resolution 80-2004 was held on June 22, 2004. It was only after that meeting that the county added a subsection to SCC 13.10.034(3) that qualified the classification of critical habitat:

> C. For purposes of this section, critical habitat shall include only those areas designated by a state or federal agency through a formal statutory or rule-making process for endangered, threatened, or sensitive species. Critical habitat for species of local importance shall be limited to those areas determined by the County when designating such a species.

The amendments were adopted on July 6, 2004, without further public hearings.

¶7 Soon after, Ms. Wagenman challenged the amendments as noncompliant with the GMA. In her reply brief, she raised for the first time a new issue regarding the language of SCC 13.10.034(3)(C):

> The county under the new "C" provisions now narrowly defines [the Washington State Department of Fish and Wildlife's habitat conservation areas] as only those areas that were designated by a formal rule-making process for ETS [endangered, threatened, or sensitive species] by either state or federal agencies.
>
> What this means is ETS will not receive the protection they need because the State of Washing[ton] does NOT by rule-making designate critical habitat areas. In addition[,] the U.S. Fish and Wildlife does by rule-making designate SOME but not ALL areas in which ETS have primary association and only for those "federal" areas in which they have jurisdiction.

Hearing Board Record (HBR) Doc. 31, at 13-14. She also asserted that the public participation requirements had been violated when SCC 13.10.034(3)(C) was adopted. Futurewise did not participate as a party in this action. Although these new issues had not been timely raised, the parties agreed that it would be best to examine the merits of the new compliance issue and submitted supplemental briefing. The Washington State Department of Fish and Wildlife (Wildlife Department) submitted an amicus brief that addressed whether the county's decision to apply larger than standard riparian buffers to fish and wildlife conservation areas designated by rule as critical habitat rendered Title 13 noncompliant with the GMA. Because the Wildlife Department concluded that the GMA does not require additional protections for priority habitats, it concluded that limiting those additional protections to formally designated critical habitats complied with the GMA.

¶8 On October 15, 2004, the Board issued an order on compliance in case no. 03-1-0006c. The Board addressed only whether the GMA requires more protection for endangered, threatened, and sensitive species than it does for other fish and wildlife:

> We agree with [the Wildlife Department] that GMA does not require additional protection for priority habitat, even priority habitat associated with listed species. In other words, priority habitat is subject, at most, to the protection requirements found necessary for the protection of that habitat. Ms. Wagenman does not contend that the protections in Title 13 for fish and wildlife habitat conservation areas fail to protect functions and values. Ms. Wagenman has not met the burden of showing that the County's action is clearly erroneous and that the priority habitat is not adequately protected.

HBR Doc. 51, at 11. Although the Board concluded that the county was compliant with the GMA on most of the raised issues, it ordered the county to respond to public nominations of species and habitat.

¶9 The Board had issued a memorandum decision in September 2004 outlining the proposed decision. In response

to the memorandum decision, Ms. Wagenman filed a new petition for review before the October 2004 order on compliance was entered. This new petition, case no. 04-1--0010, challenged the public participation process used to adopt SCC 13.10.034(3)(C). The Board filed a final decision and order in case no. 04-1-0010 in February 2005 that found the amendment of SCC 13.10.034(3)(C) violative of the public participation requirements of the GMA. The resolution to adopt the amendment (Resolution 80-2004) was remanded for public comment and appropriate legislative action. After proper notification and a public hearing, the county again adopted SCC 13.10.034(3)(C) in May 2005 (per new Resolution 65-2005) without any changes.

¶10 Futurewise filed a petition for review with the Board in case no. 05-1-0006 in July 2005. It raised two general issues regarding SCC 13.10.034(3)(C): (1) that the county fails to designate all of the identified habitats of endangered, threatened, and sensitive species (hereafter referred to as "listed species") as fish and wildlife conservation areas and (2) that SCC 13.10.034(3)(C) fails to consider the best available science in designating all of the identified habitats of listed species as fish and wildlife conservation areas. The county responded that Futurewise's petition was barred by res judicata, collateral estoppel, and virtual representation.

¶11 In its January 2006 final decision and order on case no. 05-1-0006, the Board concluded that Futurewise had not been a party before and that the substantive issues raised had not been presented before. Further concluding that Futurewise met its burden of proving by clear, cogent, and convincing evidence that SCC 13.10.034(3)(C) violates the GMA, the Board remanded Resolution 65-2005 back to the county to amend SCC 13.10.034 so that it protects all listed species' habitat using the best available science.

¶12 In February 2006, the county petitioned for judicial review of case no. 05-1-0006 in the Stevens County Superior Court. The superior court affirmed the Board in a 34-page memorandum decision that rejected the county's argu-

ments for dismissal on the basis of res judicata, collateral estoppel, and virtual representation. The superior court additionally found that the Board correctly determined that the adoption of SCC 13.10.034(3)(C) was clearly erroneous under the GMA. On March 13, 2007, the court entered an order affirming the Board's final decision and order in case no. 05-1-0006. This appeal timely followed.

## EQUITABLE GROUNDS FOR DISMISSAL

¶13 We first address whether Futurewise's petition is barred by the equitable principles of res judicata, collateral estoppel, or virtual representation. The county argues that Futurewise participated in Ms. Wagenman's petitions in case nos. 03-1-0006c and 04-1-0010 and had a full and fair opportunity to litigate whether SCC 13.10.034(3)(C) complies with the GMA. The county contends it has had to defend the same provision of its code three times in separate legal actions, while Futurewise had standing and notice but chose to advise another party rather than to participate in the two prior actions. Futurewise responds that its current petition is not barred because the parties, the subject matter, the issues, and the evidence are not the same.

¶14 On review of the Board's decisions, this court applies the standards of the Administrative Procedure Act, chapter 34.05 RCW. *Swinomish Tribal Cmty.*, 161 Wn.2d at 424 (citing RCW 34.05.570(3)). We review the Board's legal conclusions de novo, with deference to the Board's interpretation of the statute it administers. *Id.* (quoting *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000)). The Board's findings of fact are reviewed for substantial evidence. *Id.*

¶15 I. RES JUDICATA. The equitable doctrine of res judicata, or claim preclusion, prevents the same parties from relitigating a claim that was raised or could have been raised in an earlier action. *Roberson v. Perez*, 156 Wn.2d 33, 41 n.7, 123 P.3d 844 (2005). The doctrine is intended to

prevent piecemeal litigation and to ensure the finality of judgments. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005). The party asserting res judicata must establish that the subsequent action is identical to an earlier action in (1) identity of persons and parties, (2) the subject matter, (3) the cause of action, and (4) the quality of the persons for or against whom the claim is made. *Id.* The doctrine applies to quasi-judicial administrative agency decisions. *Clallam County v. W. Wash. Growth Mgmt. Hearings Bd.*, 130 Wn. App. 127, 132, 121 P.3d 764 (2005).

¶16 In its final decision and order in case no. 05-1-0006, the Board found that the evidence did not show that Futurewise had been a party in the earlier petitions or that the specific issue being decided in the current case had been decided earlier. Accordingly, it concluded that neither res judicata nor collateral estoppel applied to this case. Review of the evidence supports the Board's findings and shows that none of the factors for the application of res judicata is established here.[1]

¶17 *Identity of Parties.* Res judicata requires a concurrence of identity in persons or parties. *In re Election Contest Filed by Coday*, 156 Wn.2d 485, 500-01, 130 P.3d 809, *cert. denied*, 549 U.S. 976 (2006). Even a nonparty may have a concurrence of identity if the nonparty is in privity with a party. *Feature Realty, Inc. v. Kirkpatrick & Lockhart Preston Gates Ellis, LLP*, 161 Wn.2d 214, 224, 164 P.3d 500 (2007). Generally, privity for the purposes of res judicata " 'is construed strictly to mean parties claiming under the same title.' " *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 764, 887 P.2d 898 (1995) (quoting *Owens v. Kuro*, 56 Wn.2d 564, 568, 354 P.2d 696 (1960)). A party has privity with a nonparty if the party adequately represented the nonparty's interests in the prior proceeding. *Feature*

---

[1] This court's review is confined to the findings and conclusions of the Board. *Swinomish Tribal Cmty.*, 161 Wn.2d at 424. Nevertheless, we note that Superior Court Judge Rebecca Baker wrote an exhaustive and helpful analysis of the equitable and substantive issues in her memorandum decision.

*Realty,* 161 Wn.2d at 224. Privity is also established when a nonparty is in actual control of the litigation or substantially participates in it. *Loveridge,* 125 Wn.2d at 764. "Mere awareness of the proceedings is not sufficient to place a person in privity with a party to the prior proceeding." *Id.*

¶18 Here, the county does not establish a concurrence of identity in Futurewise and Ms. Wagenman. Futurewise was not a named party in the earlier petitions brought by Ms. Wagenman. And the county has not shown that Ms. Wagenman adequately represented Futurewise's interests in the prior petitions or that Futurewise controlled or substantially participated in those petitions.

¶19 In promotional materials, Futurewise describes itself as "the only statewide group dedicated to stopping sprawl and protecting livable communities" by "working one-on-one with local planning departments, testifying at public hearings on environmental protections, working collaboratively with local groups, and when necessary following through with challenges that enforce the law." HBR at 308. Ms. Wagenman was not a member of Futurewise; in fact, she represented a group called Larson Beach Neighbors. Although Futurewise had contact with Ms. Wagenman during the adoption proceedings for Title 13, shared her concern with the county's compliance with the GMA, and admittedly provided her advice on occasion, the record simply does not show that Futurewise in any respect controlled Ms. Wagenman's litigation. There is also no evidence that Futurewise substantially participated in her petitions or that she represented Futurewise's interests in the prior proceedings.

¶20 The county points to language in Futurewise's promotional materials as indicating Futurewise took credit for the results of Ms. Wagenman's petitions. In the cited promotional letter, mailed to "Futurewise Friend[s]" to request donations, the organization's executive director claims that in recent years Futurewise has "[h]elped local activists in Ferry and Stevens Counties increase protection for farmlands, streams, and fish and wildlife habitats,

including eliminating the subdivision of farmland into small lots and increased buffers for wetlands." HBR at 308. "Help[ing] local activists" does not equate to controlling the activists' litigation or even to substantially participating. The county's assertion that Futurewise substantially participated behind the scenes is too speculative to support privity on that basis.

¶21 The county also argues that privity is established because the parties share the same "legal interests," citing *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 261, 961 P.2d 343 (1998). *Pearsall-Stipek* is one of a line of cases representing an exception to strict adherence to the privity rule of res judicata. *Coday*, 156 Wn.2d at 501. This exception is applied to actions brought by voters on behalf of the general body politic. *Id.* As explained in *Coday*, such parties have sufficiently identical interests because they have the same legal interests as all state citizens. *Id.* (quoting *Pearsall-Stipek*, 136 Wn.2d at 261). This shared interest is in "ensuring a fair, just, and accurate election." *Id.* at 502.

¶22 The interests here, however, are not sufficiently identical. The record shows that various citizens and citizen groups challenged Title 13 as it affected their particular interests. Ms. Wagenman's earlier petitions focused on protections for critical aquifer recharge areas and on public participation in adoption of Title 13 and its amendments. The order on compliance in case no. 03-1-0006c refers to additional challenges brought by other citizens and citizen groups that eventually resulted in a February 2004 order that found noncompliance in eight substantive issues and one procedural issue. These various parties, including Futurewise in the most recent petition, did not have sufficiently identical legal interests to trigger the *Pearsall-Stipek* voter exception to the privity requirement.

¶23 *Identity of Subject Matter.* The county also fails to establish identity in the subject matter. The county contends the subject matter here as well as in the previous order on compliance in case no. 03-1-0006c is SCC 13.10.034(3)(C)'s compliance with the GMA. In particular,

the county notes that Ms. Wagenman challenged the limitation of critical habitat to areas designated by state or federal rules or statutes in case no. 03-1-0006c and Futurewise made the same challenge in case no. 05-1-0006. Although Ms. Wagenman did raise the argument that SCC 13.10.034(3)(C) in effect provides no protection because very few critical habitats are designated by state or federal rule making, the Board did not address that issue in its order on compliance in case no. 03-1-0006c. Consequently, the issue was not the subject matter adjudicated.

¶24 *Identity of Cause of Action.* Futurewise's cause of action is not identical to the causes of action in case nos. 03-1-0006c and 04-1-0010. To determine whether causes of action are identical, we ask: (1) Would rights established in the earlier judgment be impaired by the subsequent action? (2) Is substantially the same evidence involved? (3) Do the actions involve infringement of the same right? and (4) Do the suits arise from the same "transactional nucleus of facts"? *Rains v. State*, 100 Wn.2d 660, 664, 674 P.2d 165 (1983) (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).

¶25 As discussed above, in case no. 03-1-0006c, the Board did not address Ms. Wagenman's contention that SCC 13.10.034(3)(C) in effect prevents the county from designating any lands as critical habitat areas. Because that issue was not decided in the prior cases, the county had no reason to expect that SCC 13.10.034(3)(C) would withstand Futurewise's challenge on the same basis. Futurewise also raised an additional issue: that SCC 13.10.034(3)(C) allows the county to make decisions regarding critical habitat without the use of the best available science. This issue was not raised in the prior cases. Additionally, the decision in case no. 04-1-0010 concluded that the adoption of SCC 13.10.034(3)(C) (in Resolution 80-2004) was not compliant with the GMA, and remanded for legislative action to allow public participation. By this ruling, the Board essentially reopened the consideration of SCC 13.10.034(3)(C) for public input and amendment. At this

point, the county had no established rights in the language of SCC 13.10.034(3)(C) that would be impaired by Future-wise's later challenge.

¶26 It is true that at least one key piece of evidence—an e-mail from Wildlife Department employee Kevin Robin-ette—was attached to the reply brief in case no. 03-1-0006c and was also integral to Futurewise's petition. And one of Futurewise's challenges is identical to Ms. Wagenman's reply brief issue: that SCC 13.10.034(3)(C) does not desig-nate all of the identifiable habitats of listed species. But the fact remains that the Board had never actually ruled on this issue. Accordingly, Futurewise's petition does not have an identical cause of action for res judicata purposes.

¶27 *Identity in Quality of the Claimants.* The county contends the quality of Futurewise and Ms. Wagenman is identical because Futurewise advised her in her peti-tions. Whether or not Futurewise provided advice to Ms. Wagenman, however, the claimants are clearly very differ-ent in quality. Ms. Wagenman, a citizen of Stevens County, acted pro se. Futurewise is a statewide organization that represents broad interests related to the GMA. The evi-dence does not support the county's assertion that these claimants have a concurrence in their quality.

¶28 II. Collateral Estoppel. Similar to res judicata, collateral estoppel prevents a party from reliti-gating issues that have been raised and litigated by the party in a prior action. *Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 449, 951 P.2d 782 (1998). Unlike res judicata, collateral estoppel is applicable when the claim is different but some of the issues are the same. *Garcia v. Wilson*, 63 Wn. App. 516, 518 n.5, 820 P.2d 964 (1991). Important here, "collat-eral estoppel precludes only those issues that have actually been litigated and determined." *McDaniels v. Carlson*, 108 Wn.2d 299, 305, 738 P.2d 254 (1987). Not only are Ms. Wagenman and Futurewise not the same party, but Ms. Wagenman's claim that SCC 13.10.034(3)(C) unlawfully limits critical habitats to those established by govern-

ment rule or statute was not addressed in the prior cases. Although raised, the issue was not actually determined. Consequently, collateral estoppel does not bar Futurewise from raising the same issue.

¶29 III. Virtual Representation. The doctrine of virtual representation allows collateral estoppel to be used against a nonparty that is in privity with a party. *State v. Cloud*, 95 Wn. App. 606, 614, 976 P.2d 649 (1999) (quoting *Garcia*, 63 Wn. App. at 520); *see Frese v. Snohomish County*, 129 Wn. App. 659, 665, 120 P.3d 89 (2005). This doctrine is applied cautiously due to the danger of depriving a nonparty of its day in court. *Frese*, 129 Wn. App. at 665 (quoting *Garcia*, 63 Wn. App. at 520). Washington courts apply this doctrine only when the nonparty participated in the former adjudication, for instance as a witness, and when there is evidence that the subsequent action "was the product of some manipulation or tactical maneuvering." *Garcia*, 63 Wn. App. at 521. Here, collateral estoppel is not otherwise applicable to the issues raised by Futurewise and there is no evidence that Futurewise participated in Ms. Wagenman's litigation or engaged in tactical maneuvering. Consequently, virtual representation is not applicable.

¶30 In summary, the county fails to establish the necessary elements of res judicata, collateral estoppel, or virtual representation. We therefore turn our attention to the Board's final decision and order in case no. 05-1-0006.

## STANDARD OF REVIEW

¶31 The county first contends the Board applied the wrong standard of review. Growth management hearings boards determine compliance with the GMA and are authorized to invalidate noncomplying comprehensive plans and development regulations. *Swinomish Tribal Cmty.*, 161 Wn.2d at 423. Counties and cities are granted broad discretion in planning for growth as long as their comprehensive plans and development regulations comply with the requirements and goals of the GMA. RCW 36.70A.3201. A

county's development regulations are presumed compliant. *Swinomish Tribal Cmty.*, 161 Wn.2d at 424 (quoting RCW 36.70A.320(1)). Accordingly, the Board must find compliance unless it decides that the county's action is " 'clearly erroneous' " in light of the goals and requirements of the GMA. *Id.* at 423 (quoting RCW 36.70A.320(3)). An action is clearly erroneous if the Board has a firm conviction that a mistake has been committed. *Id.* at 423-24 (quoting *Cent. Puget Sound Hearings Bd.*, 142 Wn.2d at 552).

¶32 As discussed above, this court reviews the Board's legal conclusions de novo, giving substantial weight to the Board's interpretation of the GMA. The Board's findings of fact are reviewed for substantial evidence. *Id.* at 424.

¶33 In the synopsis section of the final decision and order in case no. 05-1-0006, the Board explained that it "looked to the statutes and the law" and found that the county was "clearly out of compliance." HBR at 448. Later, in the standard of review section, the Board correctly noted that development regulations are presumed valid. It also recognized, however, that a Board acts properly if it forgoes deference to a county's action that is not consistent with the requirements and goals of the GMA. *Thurston County v. Cooper Point Ass'n*, 108 Wn. App. 429, 444, 31 P.3d 28 (2001), *aff'd*, 148 Wn.2d 1, 57 P.3d 1156 (2002). Finally, the Board cited the requirement in RCW 36.70A-.320(3) that it must find compliance unless it determines that the county is clearly erroneous. In its conclusion, the Board stated that Futurewise had shown with clear, cogent, and convincing evidence that Resolution 65-2005, amending SCC 13.10.034, violated the GMA.

¶34 The relevant finding of fact in the final decision and order states only that the county "failed to protect a listed species and potentially future listed species critical habitat as required by the GMA." HBR at 467. Conclusion of law 9 states that Futurewise carried its burden of proof and showed "by the evidence in the record that the actions of Stevens County are clearly erroneous." HBR at 467.

¶35 The county contends the findings are too abbreviated to allow for a challenge to the evidentiary basis. But review of the entire decision and order indicates that the Board dealt fully with the issues presented and provided the analysis and evidence used as the basis for its decision. *Cf. Weyerhaeuser v. Pierce County*, 124 Wn.2d 26, 35-36, 873 P.2d 498 (1994) (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 218-19, 728 P.2d 138 (1986)).

¶36 Contrary to the county's assertion, the Board did not use an incorrect evidentiary standard. The Board's reference to Futurewise's burden of proof as clear, cogent, and convincing is actually an overstatement: the findings used to support the conclusion that the county clearly erred need only be supported by substantial evidence. *Swinomish Tribal Cmty.*, 161 Wn.2d at 424. In its statement of the standard of review, its analysis, and its conclusion, the Board applied the proper deference under RCW 36.70A-.320(3) as well as the proper standard for concluding that the county's actions in amending SCC 13.10.034(3)(C) were clearly erroneous.

## COMPLIANCE WITH THE GROWTH MANAGEMENT ACT

¶37 The county next contends the Board erred by concluding that SCC 13.10.034(3)(C) does not comply with the GMA. In particular, the county argues that the Board erroneously concluded that (1) the county was required to designate all identified habitats of listed species as fish and wildlife habitat conservation areas and (2) the county did not consider the best available science in designating the habitats of protected species. The county seeks to invalidate the Board's final decision and order in case no. 05-1-0006 on two bases: (1) the Board erroneously interpreted or applied the law (RCW 34.05.570(3)(d)) and (2) the Board's findings are not supported by substantial evidence (RCW 34.05-.570(3)(e)). At issue are the requirements of the GMA and the role of the county in meeting those requirements.

¶38 I. Designation and Protection of Critical Areas. The county first contends the Board erred as a matter of law by concluding that the GMA requires counties to designate and protect all the habitats of listed species.

¶39 As discussed above, one of the primary requirements of the GMA is that counties and cities under its authority must designate and protect critical areas. *Swinomish Tribal Cmty.*, 161 Wn.2d at 424; RCW 36.70A.020(9), .060(2), .170(1)(d). Fish and wildlife habitat conservation areas are critical areas. RCW 36.70A.030(5). "Areas with which endangered, threatened, and sensitive species have a primary association" are included in the category of fish and wildlife habitat conservation areas to be protected. WAC 365-190--080(5)(a)(i). The goal of fish and wildlife habitat conservation is to manage land so as to maintain species

> in suitable habitats within their natural geographic distribution so that isolated subpopulations are not created. This does not mean maintaining all individuals of all species at all times . . . . In some cases, intergovernmental cooperation and coordination may show that it is sufficient to assure that a species will usually be found in certain regions across the state.

WAC 365-190-080(5).

¶40 Citing WAC 365-190-080(5), the county contends the GMA does not require counties to protect all the designated habitats of endangered, threatened, and sensitive species. But the rule merely states that land use regulations are not required to protect every individual of listed species, wherever and whenever that individual may be found within the county. The GMA directs counties to determine what lands are primarily associated with listed species, and then to adopt regulations protecting those lands. RCW 36.70A.020(9), .030(5), .060(2), .170(1)(d). The Board properly concluded that the GMA requires the county to designate and protect all critical areas within its boundaries.

¶41 II. Evidence To Support the Use of the Best Available Science. In designating critical areas and developing regulations to protect them, a county "shall include the

best available science." RCW 36.70A.172(1). Use of the best available science in the development of critical areas regulations is especially important to decision making that affects threatened or endangered species. WAC 365-195-900(3).

¶42 To assist counties and cities in meeting the goals of the GMA, the legislature directed the adoption by rule of procedural criteria that reflect regional variations. RCW 36.70A.190(4)(b); WAC 365-195-900(4). One of those rules is WAC 365-195-905(2), which states that counties and cities "may use information that local, state or federal natural resource agencies have determined represents the best available science."

¶43 The Wildlife Department is a state resource agency that identifies and classifies native wildlife that needs protection to ensure survival in Washington. *Ferry County v. Concerned Friends of Ferry County*, 155 Wn.2d 824, 828 n.1, 123 P.3d 102 (2005) (citing WAC 232-12-297). Relevant here, the Fish and Wildlife Commission (the supervising authority of the Wildlife Department) classifies species that need protection as endangered, threatened, or sensitive. *Id.* (citing WAC 232-12-297). These endangered, threatened, and sensitive species are designated as "priority species" that are included in regional priority habitat lists created by the Wildlife Department. *Id.* The priority habitat lists are the primary resource provided by the Wildlife Department to local governments and landowners for land use planning purposes. *Id.*

¶44 Both parties here agree that the Wildlife Department's priority habitat maps are the best available science on the county's critical areas for listed species. The county insists that it included the priority habitat maps in its development of SCC 13.10.034(3)(C) but that it is not required to use that information to enhance protection for critical areas. Contrary to the county's argument, SCC 13.10.034(3)(C) does not enhance protection for priority

habitat and does not designate or protect priority habitat using the best available science.

¶45 As the Board noted in its final decision and order:

The County has done an admirable job [in Title 13] of requiring pre-set buffers or alternative buffers set on a case by case basis, and requiring a report from a qualified professional to set management recommendations, if a development is within "a mapped critical habitat area" for ETS species. But the County falls short by defining "critical habitat" as "only those areas designated by a state or federal agency through a formal statutory or rule-making process.["]

HBR at 459. Far from enhancing protections to critical areas, SCC 13.10.034(3)(C) limits the areas that are subject to standard buffers in development proposals to those critical habitats that have been formally recognized in governmental rules or statutes. The county contends this subsection reflects its balancing of private property rights and conservation of fish and wildlife, both goals of the GMA. RCW 36.70A.020(6), (9). If priority habitats are determined solely from the priority maps that are continually updated by the Wildlife Department, the county argues, private landowners will be denied their right to notice and an opportunity to be heard regarding development of their land.

¶46 As stated in *Swinomish Tribal Community*, the GMA gives counties broad discretion in developing regulations tailored to local circumstances. *Swinomish Tribal Cmty.*, 161 Wn.2d at 430. A county is not required to follow the recommendations of the best available science and may depart from those recommendations if the county provides a reasoned justification for the departure. *Id.* at 430-31. In *Swinomish Tribal Community*, the county justified a decision not to require mandatory riparian buffers because that requirement would in effect require restoration of habitat that no longer existed. *Id.* at 431. The best available science indicated that riparian buffers were needed to protect fish habitat, but that much of the riparian area had been diked and drained for agricultural purposes as much as 100 years

ago. *Swinomish Tribal Community* agreed that a county does not have a duty under the GMA to enhance critical areas; consequently, a county need not impose a requirement that would require farmers to replant buffers along critical areas. *Id.*

¶47 Here, unlike in *Swinomish Tribal Community*, the county was not addressing best available science that would have required enhanced protection for critical habitat. By tying the classification of critical habitat to lands designated by formal governmental rule making or statute, the county effectively avoided consideration of any scientific information. Significantly, as noted by the Board, evidence from Wildlife Department employees shows that although the State of Washington follows a rule-making process to designate endangered, threatened, and sensitive species, it does not designate critical habitat through a formal rule-making or statutory process. And the critical habitat designated by federal rule or statute is limited to federal lands or state lands with a federal nexus (such as tied to federal funding).

¶48 The county argues that the actual effect of SCC 13.10.034(3)(C) is negligible because, as the Board admits, only the lynx is not protected throughout its extended range.[2] This court's review, however, is confined to whether the Board properly interpreted the GMA and to whether the Board correctly concluded that the county's action was clearly erroneous. *Id.* at 424. The Board correctly concluded that the GMA requires counties to adopt regulations that protect designated critical areas. *Ferry County*, 155 Wn.2d at 833. The Board also recognized that counties must rely on scientific methodology in determining these critical areas. *Id.* at 837-38. Reliance on legislative rule making to identify critical areas is not reliance on the best available

---

[2] The parties agree that six state-listed endangered, threatened, or sensitive species are located in Stevens County: bald eagle, golden eagle, bull trout, steelhead, common loon, and lynx. SCC 13.10.031(1). Federal, state, or county action protects the bald eagle, golden eagle, bull trout, and steelhead; the loon appears to be somewhat protected because it inhabits waterways that are protected.

science because it removes the county from the role of considering scientific information in a reasoned process of analysis. *See id.* at 835 (WAC 365-195-900 through -925 require valid scientific information to be analyzed in a reasoned process). Although the county is not required to use a particular methodology, it must, at a minimum, use some kind of scientific methodology. *Id.* at 837.

¶49 To summarize, substantial evidence supports the Board's conclusion that SCC 13.10.034(3)(C) does not comply with the GMA because it fails to designate all critical habitats and fails to consider the best available science in designating critical habitats. The decision of the Board, remanding for amendment of SCC 13.10.034 to protect all listed species using the best available science, is affirmed.

BROWN and KORSMO, JJ., concur.

Review denied at 165 Wn.2d 1038 (2009).