# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROBERT E. TUTTLE, JR., | No. 49669-1-II |
| Appellant, | |
| v. | |
| ESTATE OF ANITA D. TUTTLE, Patricia Hicklin, Personal Representative; TUTTLE FAMILY LIMITED PARTNERSHIP, Eric Anderson, General Partner; ROBERT E. TUTTLE SR. TESTAMENTARY TRUST u/w/d 11/17/1993, Patricia Hicklin, Trustee; and PATRICIA HICKLIN and SYDNEY HICKLIN, SR., husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, J. — Robert E. Tuttle Jr. appeals the superior court's summary judgment dismissal of his quiet title claim against the Tuttle Family Limited Partnership (FLP) in which he was a limited partner. Tuttle[1] argues that: (1) the superior court erred in ruling that Tuttle's quiet title claim against the FLP was barred by res judicata because as a limited partner, Tuttle was in privity with the FLP; (2) the superior court erred in dismissing Tuttle's claims for trespass and wrongful logging; and (3) the superior court's award of attorney fees against Tuttle was unreasonable.

---

[1] A number of individuals in this case share the last name Tuttle. For clarity, this opinion refers to Robert Tuttle, Jr. by his last name and others with the last name Tuttle by their first name. No disrespect is intended.

We hold that the superior court erred as a matter of law in ruling that res judicata barred Tuttle's quiet title claim because he was not in privity with the FLP, nor did he share identity of subject matter, cause of action, or quality of persons with the FLP. The superior court did not rule on Tuttle's trespass and wrongful logging claims, thus we do not consider them. Accordingly, we reverse and remand for further proceedings consistent with this opinion.[2]

FACTS

A.      OWNERSHIP OF THE TUTTLE FAMILY PROPERTY

1.      The Land

Anita D. Tuttle and Robert Tuttle, Sr. married in 1941. The couple owned 300 acres of land in the area between Beaver and Forks, Washington. There, they lived, worked, and raised seven children. In 1984,[3] their son, Tuttle purchased a 40 acre plot of land adjacent to his parents' property. Tuttle later sold five acres of this plot to his sister, Doreen Hunt. Tuttle used the other 35 acres as collateral to secure a bank loan.

In 1987, Tuttle defaulted on his loan, and the bank foreclosed on his 35-acre property. Tuttle's property was publically auctioned at a trustee's sale. Anita and Robert Sr. purchased the property. According to Tuttle, his parents purchased his land as part of an agreement with him to

---

[2] Because the superior court awarded attorney fees against Tuttle based on its ruling on summary judgment and we reverse the superior court's summary judgment ruling, we also reverse the superior court's award of attorney fees. The superior court may determine the award of attorney fees at the conclusion of litigation on remand.

[3] According to Tuttle, there was a typographical error in the purchase date in his initial creditor's claim. Tuttle later corrected the issue and claimed he purchased the 40 acres in 1974. However, in its findings of fact and conclusions of law, the superior court found Tuttle purchased the land in 1984. Unchallenged findings of fact are considered verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

hold title to the land for Tuttle's use and benefit. In exchange, Tuttle contributed $28,000.00 to the purchase price at auction. Tuttle claimed his parents never occupied the land and that he and his wife were solely responsible for paying real estate taxes on the property. Tuttle and his parents agreed that the land would belong to Tuttle. However, the deed to the property remained in Robert Sr. and Anita's name.

2.      The Trust

Robert Sr. died in January 1998. His assets, including Tuttle's claimed 35 acres, were transferred to a testamentary trust for the benefit of Anita during her lifetime. Following Anita's death, her daughters Hunt and Patricia Hicklin were to serve as co-trustees of the Trust. According to Tuttle, all remainder trust assets were to be held in trust for the seven children following Anita's death. Tuttle also claimed that the terms of the Trust required all remainder Trust assets to be distributed to the children when they reached the age of 35.

In March 1999, Anita, acting as personal representative of Robert Sr.'s Estate, subdivided the total property, including Tuttle's claimed 35 acres, into four lots. She conveyed, "as her separate estate," one lot to her daughter Daisy Anderson[4] and one lot to her grandson Eric Anderson in early 2000. CP at 462, 467. Anita did not convey any portion of the subdivided land to Tuttle.

Tuttle later learned that Anita had conveyed a portion of the 35 acres he considered to be his land to Daisy and Eric. He also learned that both Daisy and Eric had built homes on the

---

[4] As with the family name Tuttle, multiple individuals share the last name Anderson. For clarity, this opinion refers to individuals with the last name Anderson by their first name. Again, no disrespect is intended.

conveyed land. Tuttle did not object to Daisy and Eric's construction because "there was no interference with [his] home and outbuildings and the remaining [22.5 acres of] land [he] had owned and occupied." CP at 190.

       3.      The Limited Partnership

In August 2000, Anita formed the Tuttle Family Limited Partnership (FLP). She transferred a number of properties into the FLP, including the remaining two subdivided lots.[5] The transferred properties included a portion of Tuttle's original 35 acres. In exchange for the transfer of properties, Anita received 100 general partnership units and 900 limited partnership units in the FLP. Anita sold approximately 80% of the 900 limited partnership units to the Trust and gifted each of her children and grandchildren, including Tuttle, a single limited partnership unit in the FLP.

Anita served as general partner to the FLP. Her grandson, Eric, was to serve as general partner upon Anita's death. Operation of the FLP primarily consisted of managing timber located on the property and distributing any proceeds to the partners according to their respective shares. Tuttle was aware of his share in the FLP because he occasionally received a small check from the FLP.

In 2010, Tuttle noticed timber cutters on a portion of his claimed property. He told the cutters to leave, and they did not return. A year later, Tuttle claimed that a different logger was

---

[5] From the record, it is unclear in what capacity Anita conveyed the property. The superior court's findings of fact do not state whether Anita conveyed the property in her individual capacity or as trustee of the Trust. Further, the exhibits provided to the superior court show that Anita subdivided the property as "personal representative of the Estate of Robert E. Tuttle Sr." CP at 459. However, in the quit claim deeds conveying lots to Daisy and Eric, Anita was listed as the grantor, "as her separate estate." CP at 464, 467.

4

hired to log trees on the remaining 22.5 acres he considered to be his property. Tuttle suspected that Hicklin was responsible for the logging of his claimed acreage.

Toward the end of Anita's life, some of the Tuttle children grew concerned over the management of the FLP but no formal action was taken at that time. Anita died in April 2013, and her will was submitted to probate in May 2013.

B.    LAWSUITS FOLLOWING ANITA'S DEATH

1.      Tuttle's Lawsuit

Hicklin was the personal representative of Anita's estate. Hicklin and Hunt became successor co-trustees to the Trust following Anita's death. Hicklin published a Notice to Creditors in the regional newspaper shortly after Anita died.

On September 19, 2013, Tuttle filed a creditor's claim against Anita's estate. Tuttle claimed title to 22.5 acres of land situated in one of the lots conveyed in early 2000. Tuttle claimed that these 22.5 acres were part of his original 35 acres, which his parents had purchased for him at the trustee sale in 1987. Tuttle claimed he was entitled to the 22.5 acres because his parents purchased the property with the understanding that it would be considered Tuttle's property. He also claimed that he and his family had been in actual, open, notorious, continuous, and exclusive possession of the property since 1987. Tuttle acknowledged in his creditor's claim that the FLP held title to his property.

In his creditor's claim, Tuttle alleged that he had requested a copy of the limited partnership agreement from the FLP, but had not received a copy. He also alleged that Anita breached one or more of her many duties as general partner of the FLP, including her duty of loyalty and fiduciary duties. Tuttle claimed the estate was responsible for Anita's "actions and inactions" related to the

FLP and its assets. CP at 305. Tuttle requested a copy of the limited partnership agreement and "an accounting of the activities of the limited partnership." CP at 305. The estate timely rejected Tuttle's creditor's claim.

In November 2013, Tuttle filed a lawsuit against Anita's estate; the FLP; the Robert Sr. testamentary trust; and Patricia and Sydney Hicklin, Sr., husband and wife. Tuttle identified himself as a party "who brings this action individually as well as on behalf of his marital community." CP at 296.

In the complaint, Tuttle sought: (1) judgment quieting title to his claimed 22.5 acres, (2) accounting of the activities of the FLP and the Robert Sr. testamentary trust, (3) declaratory relief with respect to management and operation of the FLP and the Robert Sr. testamentary trust, and (4) recovery of attorney's fees costs incurred. In August 2014, Hicklin, as personal representative of Anita's estate, provided Tuttle with an FLP partnership report and accounting for the years 2010 through 2012.

2. The FLP Action

In May 2014, the FLP, with Eric as its general partner, filed a lawsuit against Anita's estate; the Robert Sr. testamentary trust; and Patricia and Sydney Hicklin, Sr., husband and wife. The FLP claimed "[o]n information and belief" that Anita granted Hicklin durable power of attorney in August 2009. CP at 317.

The FLP's complaint alleged causes of action for (1) an accounting of the FLP's affairs up until the time Eric Anderson assumed the duties of general partner, (2) conversion of the FLP's assets by its general partner for their own use up until the time Eric Anderson assumed the duties of general partner, and (3) breach of fiduciary duties by the general partners in failing to properly

manage the FLP and causing the value of the FLP assets to be reduced. CP at 319. The FLP requested: (1) an order compelling a full and complete accounting for all activities performed by the former general partner or any other defendant acting on her behalf, (2) damages for conversion of the FLP assets, (3) damages for breach of fiduciary duties to the FLP, and (4) costs and attorney's fees.

C.     DISMISSAL OF LAWSUITS

Apparently, on December 19, 2014, the superior court ruled that the FLP had failed to timely comply with the probate claim statute. Therefore, the superior court granted the defendants' motion for summary judgment and dismissed the FLP lawsuit with prejudice.

On October 19, 2015, Hicklin filed a motion for summary judgment in the Tuttle lawsuit—both personally and in her representative capacities. In her motion, Hicklin claimed that Tuttle's lawsuit should be dismissed under res judicata because of the resolution in the FLP case. Hicklin alleged that both the FLP lawsuit and Tuttle's lawsuit against the Estate, Trust, and Hicklin personally were based on the same alleged conduct.

Tuttle responded by arguing that his claim to quiet title was not a claim against the Estate or against Hicklin in any capacity, and neither the Estate nor Hicklin personally had standing to contest his quiet title claim. Because the FLP undisputedly held title to Tuttle's claimed 22.5 acres, the FLP was the real party in interest and the only party with standing to defend against his quiet title claim. As to the res judicata argument, Tuttle argued that the FLP case was not resolved on the merits because the superior court dismissed the case on a "filing technicality." CP at 248.

The superior court granted Hicklin's motion and dismissed Tuttle's claims against Hicklin, the Estate, and the Trust. The court found that Tuttle "was in direct privity of interest with the

FLP by being a limited partner of the FLP." CP at 16. Thus, the superior court concluded that Tuttle's claims were barred by res judicata.

On February 29, 2016, Tuttle filed a motion for reconsideration, arguing that the resolution in the FLP lawsuit could not give preclusive effect to his claims because he filed his complaint first. Tuttle relied on *Jumamil v. Lakeside Casino, LLC*, 179 Wn. App. 665, 319 P.3d 868 (2014), to support this argument. Tuttle also argued that his quiet title claim was not the subject matter in the FLP lawsuit and that there were no identity of interests between himself and the FLP on his quiet title claim. The superior court denied Tuttle's motion for reconsideration.

The superior court awarded attorney's fees and costs to Hicklin in the amount of $17,185. And the superior court awarded attorney's fees and costs to the Estate in the amount of $14,977.07.

Tuttle appeals.[6]

## ANALYSIS

A.    STANDING

As a threshold matter, Tuttle argues that the Estate and the Hicklins lacked standing to contest his quiet title claim against the FLP because they conceded that the FLP, not the Hicklins, held title to the property. Tuttle's standing argument fails.

"A party has standing to raise an issue if it 'has a distinct and personal interest in the outcome of the case.' " *Timberlane v. Brame*, 79 Wn. App. 303, 308, 901 P.2d 1074 (1995*), review*

---

[6] The FLP also filed an appeal in this matter, seeking review of the superior court's opinions disposing of Tuttle's lawsuit on the basis of res judicata. The FLP filed a brief in support, arguing essentially the same position as Tuttle on appeal. However, the FLP was not an aggrieved party in the dismissed Tuttle lawsuit. In fact, as a named defendant, it was a prevailing party. Therefore, the FLP may not seek review by this court on the ruling in the dismissed Tuttle lawsuit. RAP 3.1.

denied 129 Wn.2d 1004 (1996) (quoting *Erection Co. v. Dept. of Labor & Indus.*, 65 Wn. App. 461, 467, 828 P.2d 657 (1992), *aff'd*, 121 Wn.2d 513 (1993)). A plaintiff establishes standing to bring a lawsuit if it can allege a personal injury "fairly traceable to the challenged conduct and likely to be redressed by the requested relief." *High Tide Seafoods v. State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986), *appeal dismissed* 479 U.S. 1073 (1987).

Here, Tuttle cannot challenge Hicklin and the Estate's standing to sue because they never brought a lawsuit. Clearly, as defendants, Hicklin and the Estate had a distinct and personal interest in the outcome of the case. Tuttle cannot hail defendants into court and then deprive them of the opportunity to defend themselves on the basis of standing. Thus, we reject Tuttle's standing challenge.

B.      RES JUDICATA

Tuttle argues the superior court erred in dismissing his lawsuit under the doctrine of res judicata because his quiet title claim and the FLP lawsuit did not satisfy any of the four elements of res judicata. We agree.

1.      Legal Principles

In reviewing an order granting summary judgment, we engage in the same inquiry as the trial court. *Kuhlman v. Thomas*, 78 Wn. App. 115, 119, 897 P.2d 365 (1995). Summary judgment is only proper if the moving party demonstrates that there is " 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Davis v. Cox*, 183 Wn.2d 269, 281, 351 P.3d 862 (2015) (quoting CR 56(c)). We must consider all facts in the light most favorable to the nonmoving party and only grant summary judgment if, "from all the evidence, reasonable persons could reach but one conclusion." *Kuhlman*, 78 Wn. App. at 120.

The finding of res judicata is a question of law we review de novo. *Emeson v. Dep't of Corr.*, 194 Wn. App. 617, 626, 376 P.3d 430 (2016). In applying this standard of review, we must determine whether the superior court erred, as a matter of law, in granting defendants' summary judgment motion on the basis of res judicata. *Kuhlman*, 78 Wn. App. at 120.

Res judicata, or claim preclusion, is an equitable doctrine that prevents the same parties from relitigating a claim that they raised, or could have raised, in an earlier lawsuit. *Stevens County. v. Futurewise*, 146 Wn. App. 493, 502, 192 P.3d 1 (2008), *review denied* 165 Wn.2d 1038 (2009). The purpose of this doctrine is to ensure finality of judgment and prevent piecemeal litigation. *Id.* at 502-03. A party asserting res judicata as a defense must prove the challenged action is identical to an earlier action in: (1) identity of parties, (2) subject matter, (3) cause of action, and (4) "the quality of the persons for or against whom the claim is made." *Id.* at 503. None of the elements of res judicata are present here.

2.      Identity of Parties and Identity in Quality of Persons

The superior court concluded that Tuttle and the FLP were the same party because as a limited partner, Tuttle was in privity with the FLP. We hold that this was error.

Privity for the purposes of res judicata is generally " 'construed strictly to mean parties claiming under the same title.' " *Id.* (quoting *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 764, 887 P.2d 898 (1995)). However, privity exists between a party and nonparty if the party adequately represented the nonparty's interests in the prior proceedings. *Id.* Privity may also be established if the nonparty was in actual control of the litigation, or else substantially participated in the litigation to which they were not a named party. *Id.* at 504. However, "[m]ere awareness of the

proceedings is not sufficient to place a person in privity with a party to the prior proceeding." *Id.* (quoting *Loveridge*, 125 Wn.2d at 764).

In determining whether a party and nonparty were in privity, courts must consider the nature of the relationship between the two parties and the nature of the claims. *Kuhlman*, 78 Wn. App. at 121; *Futurewise*, 146 Wn. App. at 505. Here, Tuttle brought a quiet title claim for land in his individual capacity against the current title holder, the FLP, a limited partnership. Thus, Tuttle and the FLP were adversaries because Tuttle claimed FLP assets as his own. This adversarial relationship does not support the conclusion that the FLP would represent Tuttle's quiet title claim to land in which the FLP held title.

Also, as discussed below, the subject matter between the two lawsuits was not substantially the same because the FLP lawsuit did not involve any sort of land ownership dispute. It cannot be said that the FLP adequately represented Tuttle's claimed title interests to the land because the subject matter of the FLP lawsuit did not involve title to land. And even if it had, the FLP would not have represented Tuttle's title interests because the FLP would have opposed Tuttle's ownership claim to its assets.[7]

Therefore, there was no identity of parties or identity in quality of parties between Tuttle and the FLP because Tuttle, as a limited partner, was not in privity with the FLP.

---

[7] Furthermore, it cannot be said that Tuttle was a party to the FLP lawsuit simply because he was a limited partner in the FLP. A limited partner is not a party to a lawsuit brought by or against a limited partnership. *See Lieberman v. Atlantic Mut. Ins. Co.*, 62 Wn.2d 922, 927, 385 P.2d 53 (1963) (a limited partner is not a proper party to a suit by or against the limited partnership).

### 3. Subject Matter

The superior court also found identity in subject matter between the two lawsuits, ruling that Tuttle's quiet title claim "was so related to the subject matter [of the FLP lawsuit] that it should have been raised in the other suit." CP at 16. We disagree.

Even if two claims are differently stated, they may still be identical in subject matter if the nature of the defendant's conduct was essentially decided in the prior claim. *Kuhlman*, 78 Wn. App. at 124. However, here, the subject matter of the FLP lawsuit was mismanagement of the FLP assets, not ownership of the land itself. Thus, Tuttle did not have an opportunity to litigate his quiet title claim in the FLP lawsuit.

Therefore, there is no identity in subject matter between the two lawsuits. And the two lawsuits were not so related that Tuttle should have raised his individual quiet title claim in the FLP action.

### 4. Same Cause of Action

Washington courts employ a four-part test in determining whether there is identity in cause of action:

> (1) whether [the] rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Kuhlman*, 78 Wn. App. at 122 (quoting *Rains v. State*, 100 Wn.2d 660, 664, 674 P.2d 165 (1983)).

Here, none of the criteria are satisfied. First, the FLP's lawsuit sought accounting of activities and damages with respect to the operation and management of the FLP and Trust. Tuttle's lawsuit claiming title to land would not destroy or impair the FLP's right to an accounting

12

and damages arising out of mismanagement of the FLP. If successful, Tuttle's quiet title claim would undoubtedly harm the FLP by depriving it of an asset, but it would not impair any rights to accounting or damages established in the FLP's suit.

Second, Tuttle did not present substantially the same evidence to support his quiet title claim as the FLP presented in support of its lawsuit. While both lawsuits addressed mismanagement of assets in the FLP and the Robert Sr. testamentary trust, Tuttle supported his claim to the 22.5 acres with evidence of an agreement with his parents, receipts showing he paid property taxes on the land, and declarations indicating he considered the land to be his own. The FLP lawsuit did not present evidence substantially similar, or even related to Tuttle's claim to land.

Third, the FLP lawsuit and Tuttle's quiet title claim do not involve infringement of the same right. The FLP lawsuit brought a claim against Hicklin for breach of fiduciary duties owed to the FLP, alleging Hicklin had mismanaged the FLP and converted its assets. Tuttle, on the other hand, claimed an individual right to 22.5 acres of land belonging to the FLP on the theories of adverse possession, constructive trust, estoppel, and unjust enrichment. Thus, the two lawsuits did not involve infringement of the same right.

Finally, the FLP lawsuit and Tuttle's quiet title claim did not arise out of the same nucleus of facts. The FLP's lawsuit arose out of Hicklin's alleged mismanagement of the FLP's assets. Conversely, Tuttle's quiet title claim arose out of an alleged agreement with his parents and evidence that he held himself out as the true owner of 22.5 acres for decades.

Because the FLP lawsuit and Tuttle's quiet title claim fail to satisfy any of the four criteria, there was no identity in causes of action between the two lawsuits.

5.      Res Judicata Does Not Apply

The four requirements for res judicata were not met.  First, there was no identity of parties because there was no privity between Tuttle and the FLP.  Second, the subject matter of the two claims differed in that one involved a claim to land title and the other alleged breach of fiduciary duties.  Third, the causes of action in the two lawsuits differed because Tuttle brought a quiet title claim, while the FLP brought an action seeking and accounting damages for Hicklin's breach of fiduciary duties.  Finally, Tuttle and the FLP were not the same quality of persons because Tuttle brought a quiet title suit in his individual capacity against the FLP, the title holder of the land, which made the two adversaries with opposing interests regarding ownership of land.  Thus, the superior court erred in dismissing Tuttle's quiet title claim based on res judicata arising from the FLP suit.[8]

C.      DISMISSAL OF TUTTLE'S TRESPASS AND WRONGFUL LOGGING CLAIMS

Tuttle also "seeks to preserve his claim against Patricia and Sydney [Hicklin], and the entities they represented, for trespass and wrongful logging of his property in 2011."  Br. of Appellant at 6.  The record shows that Tuttle never brought a trespass or wrongful logging claim.  Therefore, the superior court never dismissed these claims and Tuttle cannot "preserve" these claims on appeal.

---

[8] Respondents ask this court to affirm dismissal of Tuttle's case on the merits even if the superior court erred in finding res judicata.  Respondents argue summary judgment was proper because Tuttle presented no evidence showing Hicklin acted as general partner, converted the Trust's assets, or breached her fiduciary duty.  Because the subject matter of our review is limited to Tuttle's quiet title claim, we decline to address respondents' argument.  RAP 2.4.

Tuttle brought a complaint for "Declaratory Judgment, Quiet Title, Accounting and Damages." CP at 296 (emphasis omitted). In his complaint, Tuttle requested the following relief: (1) judgment quieting title to his claimed 22.5 acres, (2) accounting of the Trust and FLP activities, (3) judgment for declaratory relief and damages with respect to the management and operation of the FLP and Trust, and (4) attorney's fees. Thus, he never filed an action nor requested damages under the theories of trespass or wrongful logging.

Tuttle later moved to amend his complaint "with regard to the logging of his property which took place in 2011." CP at 157. The superior court dismissed Tuttle's original complaint on the basis of res judicata before it ruled on his motion to amend. Therefore, Tuttle's trespass and wrongful logging claims never became part of his complaint against the Hicklins personally or in any of their representative capacities.

Nonetheless, on appeal, Tuttle argues that his trespass and wrongful logging claims were "before the trial court" by way of his motion to amend, his declaration in support of his motion to amend, and in his supporting declaration to his original complaint. Reply Br. of Appellant at 12. However, the fact Tuttle presented the superior court with evidence that could theoretically support a trespass or wrongful logging claim is not equivalent to filing a complaint under these distinct legal theories.

Tuttle has cited to no authority supporting his argument that filing a motion to amend and presenting evidence that could support such claims means that he actually brought claims for trespass and wrongful logging. We do not consider conclusory arguments unsupported by authority. *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012), *review denied* 176 Wn.2d 1014 (2013); *West v. Thurston County.*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (passing

treatment of an issue or lack of any reasoned argument is insufficient to merit judicial consideration).

Because Tuttle never filed a complaint alleging claims of trespass or wrongful logging, the superior court never entered a final judgment on these claims for this court to review. RAP 2.2(a)(1). Therefore, we reject Tuttle's argument that the superior court erred in dismissing his trespass and wrongful logging claims.[9]

## ATTORNEY FEES ON APPEAL

Tuttle argues that he should be awarded attorney fees if successful on appeal under RCW 11.96A.150. We decline to impose attorney fees in favor of Tuttle on this basis.

For a party to be awarded attorney fees on appeal, it must "devote a section of its opening brief to the request for the fees or expenses." RAP 18.1(b). Here, Tuttle devoted a portion of his brief requesting attorney fees, but requests such fees under the Trust and Estate Dispute Resolution Act. We do not award Tuttle attorney fees on appeal because his appeal does not concern the resolution of a trust or estate issue. Though he named the Trust and Estate among the defendants in his lawsuit, he only appeals dismissal of his individual claim to quiet title against the FLP. Thus, RCW 11.96A.150 is not a proper basis to award Tuttle fees on appeal.

Respondents make a similar claim to attorney fees under RCW 11.96A.150 on appeal, arguing they should be awarded attorney fees for responding to Tuttle's trespass claim on appeal. We also reject this claim because the trespass claim was unique to Hicklin personally and did not

---

[9] We note that on remand, the superior court may consider Tuttle's motion to amend.

involve the Estate or Trust.  Therefore, we hold that attorney fees under RCW 11.96A.150 are not warranted.

We reverse the dismissal of Tuttle's quiet title claim against the FLP on the basis of res judicata and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.