[No. 54142-1-I.   Division One.   August 1, 2005.]

EVA M. FRESE ET AL., *Respondents*, v. SNOHOMISH COUNTY ET AL., *Petitioners*.

660

*Janice E. Ellis, Prosecuting Attorney*, and *Bradley E. Neunzig, Deputy*, for petitioners.

*Peter Mazzone* (of *Phillips & Mazzone*), for respondents.

¶1 BECKER, J. — The Snohomish County Department of Corrections agreed to pay certain employees for eight hours of work on a shift that includes a 30 minute meal period in exchange for their agreement to remain "on call" and on the premises during the meal period. In this lawsuit against Snohomish County (County), the employees claim the agreement is violated when they are routinely required to work through the meal period without an opportunity to sit down and eat. The trial court's decision to deny summary judgment to both sides comes before us on discretionary review. We affirm.

¶2 Plaintiffs are 162 past and present employees of the County who are or were assigned to supervise inmates in the main jail or other correctional facilities. These employees work a "straight eight"—an eight-hour shift that includes a 30-minute meal period. The collective bargaining agreement provides that such employees will remain on the premises and "on-call" during their meal period, and will be paid for all eight hours. By contrast, employees who take an unpaid 30-minute meal period during an eight hour shift are not on call during that meal period except for emergencies:

> 5.2 Meal Breaks—All employees assigned to an eight (8) hour shift exclusive of the meal period shall be entitled to a thirty (30) minute meal break during their shift. Said employees shall not be on call except for emergencies during their meal period.

5.2.1 Employees assigned to an eight (8) hour shift inclusive of the meal period shall remain on the premises and be on call during their meal period.[1]

¶3 Plaintiffs allege that the County violates the agreement by requiring them to work through their entire meal period, the same as the rest of the workday, without a genuine break. They claim this practice extends their bargained-for workday and entitles them to additional compensation as a remedy.

¶4 The County sought dismissal of the claim on summary judgment, arguing that when plaintiffs work a shift of eight hours and get paid for all eight hours, as a matter of law there is no legal basis for additional compensation. The employees cross-moved for summary judgment, arguing that additional compensation is legally required by the collective bargaining agreement and state labor regulations. Factually, they supported their motion with declarations by several corrections officers describing how their meal periods are completely taken up by the task of supervising inmates. The trial court denied both motions.

¶5 This court granted discretionary review. We review a trial court's determination on a motion for summary judgment de novo, drawing all inferences in favor of the nonmoving party. Summary judgment is proper only if the record shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

1. *The lawsuit is not precluded by* Iverson v. Snohomish County

¶6 The County contends dismissal of the suit is compelled by the precedent set in *Iverson v. Snohomish County*, 117 Wn. App. 618, 72 P.3d 772 (2003), in which this court upheld a summary judgment dismissal of a similar claim brought by a fellow Snohomish County Corrections Officer,

---

[1] Article 5, §§ 2, 2.1 of Collective Bargaining Agreement, Clerk's Papers at 48-49.

Terry Iverson. Reviewing the same section of the collective bargaining agreement, we held that being "on call" during his lunch period did not mean Iverson was entitled to additional compensation. "In fact, this provision clearly states that Iverson is required to remain on the premises and be 'on call' during his lunch period." *Iverson*, 117 Wn. App. at 622.

¶7 On this legal point, *Iverson* is controlling. That is, the employees are already being paid during their lunch period, and the obligation to remain on the premises and be on call during lunch does not, by itself, entitle them to additional compensation. But the real dispute here is whether the duties the employees were called upon to perform went beyond what the agreement contemplates for "on call" status.

¶8 Like the present plaintiffs, Iverson argued that being on call during a lunch period means something less than the constant work involved in being on duty. This court found he did not present sufficient evidence to raise a material issue of fact:

> Iverson argues that the requirement that he be "on call" does not reflect the reality of the extensive duties that he is required to perform during his lunch period. He has provided no evidence, however, regarding the amount of time he is asked to spend performing these duties during his lunch period. The only evidence in the record regarding the actual amount of work to be performed during a custody officer's lunch came from a defense witness. The witness stated that the work requirements do not take up more than 10 percent of the lunch period for a custody officer.
>
> Iverson's union agreed that he would perform certain duties during his lunch period in exchange for being paid for that time period. Any dispute that Iverson has with that arrangement should be addressed with his union. He has failed to produce any evidence that the reality of his employment contradicts the collective bargaining agreement.

*Iverson*, 117 Wn. App. at 622.

¶9 Here, in contrast to the evidence described in *Iverson*, declarations from corrections officers provide detailed evidence of the reality of their lunch period. Modules housing up to 79 inmates in the main jail are assigned one corrections officer, while those housing over 80 inmates are assigned two officers. The officers are required to eat in modules with inmates, and they say there is no letup in their responsibility for supervision during the meal period.[2] In fact, one officer says meal times actually increase his duties because of the added potential for inmate disturbances.[3] Declarants say the only time they can rest is during their 15 minute rest breaks.[4] Without a break for lunch, sometimes this means working as long as five hours without rest.[5] One officer who works in the central control tower is responsible for controlling all the facility's secured doors. He says there are never more than a few minutes between requests to open doors. "Some days, it will take several hours when I take a bite of a sandwich in between telephone calls, in between radio calls, in between opening doors."[6] According to lead plaintiff Eva Frese, it is "not a question of being on call during the lunch break; the fact is that I continue to work as if there were no break at all."[7]

¶10 According to *Iverson*, the evidence in that case showed that no more than 10 percent of the lunch period was taken up by work. Here, supplied with evidence tending to prove that all of the lunch period is routinely taken up with work, the trial court correctly concluded that the doctrine of stare decisis does not compel dismissal of the plaintiffs' claim under *Iverson*. Iverson claimed that he did not have time to eat lunch, but failed to prove it. These

---

[2] Decl. of John Hatchell, Clerk's Papers at 384.

[3] Decl. of John Rogers, Clerk's Papers at 370-72.

[4] Decls. of John Rogers, Clerk's Papers at 373; John Hatchell, Clerk's Papers at 385; Ronald Robles, Clerk's Papers at 396; Ronald Neff, Clerk's Papers at 401.

[5] Decl. of John Rogers, Clerk's Papers at 373-74.

[6] Decl. of Ronald Neff, Clerk's Papers at 405.

[7] Decl. of Eva Frese, Clerk's Papers at 414.

plaintiffs, on the other hand, have submitted substantial evidence indicating that their lunch period exists in name only.

¶11 Collateral estoppel, argued by the County for the first time on appeal, likewise does not compel dismissal because, due to the lack of evidence in *Iverson*, the issue as presented in that case was not identical. As the trial court inferred, the decision in *Iverson* "rested primarily on the evidence submitted rather than a purely legal principle."[8]

¶12 Collateral estoppel does not apply for the further reason that the County has not established the element that the plaintiffs were parties to the prior adjudication or in privity with a party. *See Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 449, 951 P.2d 782 (1998). The County contends the plaintiffs were in privity with Iverson by virtue of the doctrine of virtual representation. But preclusion through use of the doctrine of virtual representation "must be applied cautiously in order to insure that the nonparty is not unjustly deprived of her day in court." *Garcia v. Wilson*, 63 Wn. App. 516, 520, 820 P.2d 964 (1991). Use of the doctrine is inappropriate in this case not only because it was not argued below but also because the factors identified in *Garcia* as supporting application of the doctrine are not strongly present in this record. While a few of the plaintiffs presented declarations in Iverson's suit, most did not participate. Because the scanty evidence in *Iverson* justified summary judgment, the meaning of "on call" status under the collective bargaining agreement was not a fully litigated issue. And it is difficult to discern, without the benefit of a finding by the trial court, that the separation of Iverson's lawsuit from this one was the product of some manipulation or tactical maneuvering. *See Garcia*, 63 Wn. App. at 521.

¶13 In summary, *Iverson* does not establish that an employee's agreement to be "on call" during a paid lunch period necessarily and always makes it permissible for the

---

[8] Trial court's Mem. Ruling on Summ. J. (Mar. 1, 2004), Clerk's Papers at 313.

employer to demand unremitting work through the lunch period. The record developed by the plaintiffs in this case is sufficient to distinguish it from *Iverson*.

2. *It is premature to decide whether the cause of action for violations of the collective bargaining agreement is barred by plaintiffs' failure to exhaust remedies provided by the agreement*

¶14 In 2000, the union declined to pursue a grievance on behalf of Iverson with respect to meal breaks. The union told Iverson it waived its right to file a grievance because the issue had been raised at past contract negotiations and discussed extensively at meetings of the Labor-Management Committee. But more recently, the union did participate in a grievance concerning meal breaks filed by one of the instant plaintiffs, Juan Rubio, "on behalf of all employees affected."[9] In April 2003 Rubio's grievance proceeded to a hearing with a representative of the Snohomish County Executive.[10] The County's representative found that Rubio "has a break from his duties to eat his meal but is on call to attend to matters that cannot wait until he finishes his meal. . . . Employees are not required to perform their normal duties during their meal break."[11] Scheduling of the next step, arbitration, was stayed by this court with the agreement of the parties but over the objection of the union.

¶15 The County contends the trial court erred in allowing the plaintiffs to pursue their cause of action based on the collective bargaining agreement without first exhausting the contractual remedy of the grievance procedure. The plaintiffs respond that they should not be bound by the union's new position because there is no assurance that the union will not change position again.

---

[9] Letter from County labor relations advisor Cabot Dow to union representative Kelly Blomquist (May 16, 2003), Clerk's Papers at 227.

[10] Letter from County labor relations advisor to union representative (May 16, 2003), Clerk's Papers at 225-28.

[11] Findings of Fact 2 and 4, Letter from County labor relations advisor to union representative (May 16, 2003), Clerk's Papers at 227.

¶16 The trial court declined to resolve the dispute on summary judgment. The grievance on behalf of Rubio "represents a change of position by the union, which previously waived any right to assert a grievance on behalf of Iverson, and it cannot be stated with any certainty that resolution of this individual grievance will address the range of issues by all the plaintiffs in this case."[12]

¶17 Exceptions to the exhaustion requirement are recognized where the underlying policies favoring exhaustion are outweighed by considerations of fairness or practicality. Also, exhaustion is not required if resort to the collective bargaining agreement procedure would be futile. *Moran v. Stowell*, 45 Wn. App. 70, 77, 724 P.2d 396 (1986). Further fact finding in the trial court may well be helpful in determining whether any of these exceptions apply to the grievance under the collective bargaining agreement. And the lawsuit includes a claim under state regulations that would not be addressed in the resolution of Rubio's grievance. The trial court correctly concluded that dismissal of the plaintiffs' complaint on the basis of failure to exhaust remedies is unwarranted at this stage of the proceedings.

¶18 We are lifting the stay of arbitration that this court imposed pending appeal, without prejudice to the issue being raised in the trial court on remand.

*3. The claim based on state meal period rules after May 20, 2003, is not barred unless the County can show how the collective bargaining agreement varies from, or supersedes, those rules*

¶19 In addition to the cause of action based on the language of the collective bargaining agreement, the plaintiffs allege a violation of an industrial welfare rule governing meal breaks. They acknowledge that this claim applies only to events after May 20, 2003, the effective date of a statutory amendment that for the first time brought public employers such as the County within the definition of

---

[12] Order on Summ. J., Clerk's Papers at 314.

"employer" for purposes of industrial welfare regulations. *See* RCW 49.12.005(3)(b), as amended by Laws of 2003, ch. 401, § 2, (effective May 20, 2003). At the same time that the legislature brought public employers into the statute, the legislature authorized them to enter into collective bargaining agreements that "vary from or supersede" the rest and meal period regulations. The amended statute now reads:

> This chapter shall not be construed to interfere with, impede, or in any way diminish the right of employees to bargain collectively with their employers through representatives of their own choosing concerning wages or standards or conditions of employment. . . .
>
> *Employees of public employers may enter into collective bargaining contracts, labor/management agreements, or other mutually agreed to employment agreements that specifically vary from or supersede, in part or in total, rules adopted under this chapter regarding appropriate rest and meal periods.*

RCW 49.12.187 (as amended by Laws of 2003, ch 401, § 3).

¶20 The County claims that the effect of the legislative action is that rest and meal periods for the plaintiffs continue to be controlled solely by the collective bargaining agreement, so that even after May 20, 2003, plaintiffs have no claim based upon the rest and meal period regulations adopted under the statute. The County, however, has thus far failed to show that the collective bargaining agreement specifically varies from, or supersedes, the provisions of the regulation in question. The regulation specifies the timing of meal periods:

> (1) Employees shall be allowed a meal period of at least 30 minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.
>
> (2) No employee shall be required to work more than five consecutive hours without a meal period.

WAC 296-126-092. The collective bargaining agreement merely provides that employees assigned to an eight hour

shift inclusive of the meal period "shall remain on the premises and be on call during their meal period."[13]

¶21 Both the regulations and the agreement contemplate a meal period. Both require the employer to pay wages during the meal period to an employee who must remain on the premises while eating. The collective bargaining agreement does not specify meal break arrangements that are different from what the regulation provides.

¶22 We conclude the trial court correctly refused to dismiss the employees' cause of action for violations of WAC 296-126-092 occurring after May 20, 2003.

*4. The plaintiffs are not yet entitled to judgment as to any issue in the case*

¶23 The plaintiffs assign error to the trial court's refusal to grant their motion for summary judgment. They contend the declarations they submitted established the County's liability as a matter of law. They ask this court to order their motion granted and remand for a determination of damages.

¶24 It is too early in the litigation to decide the meaning of "on call" in the collective bargaining agreement. This is, first and foremost, an issue of contract interpretation. The same contract provides that certain other employees will be available to respond to an emergency during their lunch period even though they are not paid for their lunch period. Because the plaintiffs are being paid during their lunch period, their agreement to be on premises and "on call" during lunch must mean they will do more than respond to emergencies. But how much more? Can any inference be drawn from the fact that the agreement itself does not distinguish between being on call during the lunch break and working through the lunch break? Is more work required during the meal period today than at the time when the agreement was made? If there was a violation, is additional compensation an appropriate remedy or only

---

[13] Collective Bargaining Agreement, Clerk's Papers at 49.

injunctive relief? The parties have not really confronted these questions in the record we have seen thus far.

¶25 The record is likewise too undeveloped to support a decision on the plaintiffs' claimed violations of WAC 296--126-092. The key cases in this area are *Wingert v. Yellow Freight Systems, Inc.*, 146 Wn.2d 841, 50 P.3d 256 (2002), and *White v. Salvation Army*, 118 Wn. App. 272, 75 P.3d 990 (2003). *Wingert* involved rest breaks, not meal breaks. The court found that employees who went more than three hours without a rest break as a result of working overtime were, in effect, extending their workday by 10 minutes without getting paid for it. *White* does address meal breaks; it holds that under the regulation, employees who are paid to be on the premises and on call during meal breaks are not entitled to additional pay simply because the breaks are unscheduled, intermittent, or interrupted by work duties. In that case, the employees' activity logs showed various times throughout the workday in which they were not actively engaged in work-related activities. Because they had sufficient time to rest and eat, their claim for additional compensation was properly dismissed. Neither *Wingert* nor *White* is clearly dispositive of the plaintiffs' claims under the regulation, although they may be instructive on a more fully developed factual record. At this point, plaintiffs have not conclusively proved that they never have time to eat. Rebutting evidence is found in the declaration of Christopher Bly, the facility commander at the jail. Bly says employees in the control tower are provided with a microwave oven and refrigerator, an arrangement that "allows the operator to eat as he can throughout his shift."[14] Officers have the authority to tell inmates to leave them alone during their meal period. According to Bly, custody officers "can find time to eat" during their shift.[15]

¶26 We conclude the record is not sufficiently well developed to determine that the County's practices have, either

---

[14] Decl. of Christopher Bly, Clerk's Papers at 436.

[15] Decl. of Christopher Bly, Clerk's Papers at 437.

routinely or occasionally, denied any or all of the plaintiffs a meal period in violation of the collective bargaining agreement or the regulation. The trial court properly denied the employees' motion for summary judgment on the issue of the County's liability.

¶27 Finally, we note that the plaintiffs have abandoned their claim under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219. On remand, reinstatement of this claim should not be permitted.

¶28 Remanded for further proceedings. The stay of arbitration is lifted.

Cox, C.J., concurs.

¶29 APPELWICK, J (concurring) — I concur in the majority opinion, but feel compelled to comment on the *Iverson v. Snohomish County*, 117 Wn. App. 618, 72 P.3d 772 (2003), decision and the choices available on remand.

¶30 The collective bargaining agreement recognizes two situations. Under section 5.2 employees with a 30-minute break during their shift are expected only to be on call to respond to emergencies. To the extent they respond to emergencies they are not entitled to additional compensation. Under section 5.2.1 employees assigned to an eight-hour shift inclusive of meal periods must be on the premises and on call to respond to any need—emergent or not—during the meal period. They are paid for that meal period whether they are called upon to respond or not.

¶31 The evidence in *Iverson* was that Iverson was on call and responded to calls no more than 10 percent of the meal period. However, the 10 percent figure was in itself significant to the decision; it was not a threshold or an upper bound recognized by the court. The evidence showed that Iverson was on-call as bargained for during the meal period, performed emergent and nonemergent work as needed and *was able to have his meal*.

¶32 If on remand it is established that the work demanded of employees covered by section 5.2.1 is so perva-

sive, on a regular basis, as to go beyond being on call and to eliminate an opportunity for the employees to have their meal during that period or the remainder of their shift, then more is expected of them than the collective bargaining agreement contemplates and then *Iverson* is not controlling.