
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE SAGE GROUP I, LLC, a
Washington limited liability company;
M3, INC., a Washington corporation;
RONALD WORMAN and SALLY
WORMAN, individually and the marital
community composed thereof; ERIK
VAN ALSTINE, individually and his
marital community,

                Appellants,

        v.

JOHN KOTTER and NANCY
DEARMAN, individually and the marital
community composed thereof;
KOTTER ASSOCIATES, INC., a
Massachusetts corporation; KOTTER
INTERNATIONAL, INC., a
Massachusetts corporation;
SAGE|KOTTER, LLC, an inactive
Delaware limited liability company,

                Respondents.

No. 71405-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 24, 2015

LEACH, J. — The Sage Group I LLC, M3 Inc., Ronald and Sally Worman, and Erik Van Alstine (collectively Sage Group) appeal a trial court's summary judgment ruling that collateral estoppel bars Sage Group's constructive trust claims against John Kotter and Kotter's wife, Nancy Dearman (collectively the Kotters), and the Kotters' business entities. Sage Group also challenges the trial

court's denial of its motions for summary judgment on the basis of constructive trust and successor liability.

Because Sage Group had a full and fair opportunity at arbitration to litigate the central issue in this case—the value of a former business partner's ownership interest—we affirm the trial court's conclusion that collateral estoppel bars Sage Group's claims for constructive trust. And because the arbitrator and trial court both correctly determined that no property existed over which they could justly impose a constructive trust, we affirm the trial court's denial of Sage Group's motion for summary judgment.

## FACTS

In 2002, Ronald Worman and Dana Green formed the Sage Group, which provided advice, consulting, and services to business entities, using its "Path to Value™" methodology. As managing members of the Sage Group, Worman and Green shared equally the income generated by consulting agreements, plus any stock or other ownership interests they obtained in the companies they assisted. Erik Van Alstine, who ran M3 Inc., was not a member of the Sage Group but at various times worked as a consultant to the company.

In spring 2007, Van Alstine e-mailed Dr. John Kotter, a Harvard Business School professor and successful author of books on business leadership and organizational change. Kotter and his wife, Nancy Dearman, established and

owned Kotter Associates Inc., a multimillion dollar business they operated. Van Alstine, Worman, and Green believed that Kotter represented a valuable business opportunity, and Kotter wished to promote his ideas in a way that reached many more people.

In fall 2007, Van Alstine introduced Kotter to the Sage Group, and in February 2008, Kotter and the Sage Group executed a written consulting agreement. This agreement, signed by Green as "Managing Principal," provided for $20,000 per month payments to the Sage Group from February through October 2008 in exchange for using its Path to Value™ methodology to implement Kotter's business plan. The agreement specified that it was "intended to provide for the provision of consulting services on an independent contractor basis, and is expressly not intended to create a joint venture, partnership, agency, employment or other relationship." It made no reference to Worman or Van Alstine.

Because Green, Worman, and Van Alstine agreed that Green would take the lead in building a relationship with the Kotters, Green continued to travel to Boston and work directly with them. In June 2008, John Kotter proposed creating a new relationship: "No consultant and client. All new revenue from joint activities is split by some formula." Green agreed, and he and Kotter pursued plans to create a new business. Initially, Worman participated in some

discussions. In communications about business and personal goals and priorities, Kotter emphasized the importance of maintaining a reputation "as pure as snow white" and that he "won't work with anybody of questionable ethics." Green, Van Alstine, and Worman agreed that they would share equity interests in the new business equally but did not tell the Kotters about this arrangement.[1]

The Sage Group, Worman, and Van Alstine worked with Green to help develop Sage|Kotter, established as a Delaware limited liability company (LLC) in August 2008. Green continued to communicate with Worman about ongoing negotiations related to ownership interests but disclosed progressively less information. By the last months of 2008, Green pursued only his interests in Sage|Kotter and no longer promoted Worman's interests as his co-member or the interests of Sage Group as a whole.

In October 2008, Kotter proposed that Dearman own 51 percent of Sage|Kotter and Green or "[Green] and friends" own 49 percent. In December, however, Worman received from Green a proposed Sage|Kotter operating agreement that allocated to the Kotters and Green 96 percent of the company and all voting and management rights. It provided Worman a 4 percent nonvoting interest. The agreement made no provision for Van Alstine. In

---

[1] They also did not tell them that in 2000, state authorities found Van Alstine and a company on whose board Worman was a member liable for violations of securities laws.

January 2009, over Worman and Van Alstine's objections, Green and the Kotters executed the final version of the Sage|Kotter LLC operating agreement. This agreement allocated to Green and the Kotters 38 percent and 62 percent ownership interests, respectively. It also made no provision for Worman or Van Alstine.

The Sage|Kotter operating agreement provided that the Kotters could unilaterally dissolve the LLC at any time during a five-year "initial period." The Kotters' attorney clarified in an e-mail that "[Kotter] expressly wants to retain and does retain all his 'inventions' under the IP [intellectual property] Licensing Agreement, while, at the same time, he grants the LLC an exclusive license to all such inventions." And a member services agreement executed by Green and Kotter memorialized Kotter's absolute control over his intellectual property as "head of research, with the title Chief Innovation Officer":

> [Kotter] is expressly granted the authority to claim the copyright or the sharing of the copyright for all ideas, products or services based substantially on his work on behalf of himself, on behalf of Sage|Kotter or on behalf [of] some combination of individuals and Sage|Kotter, as he deems fair and appropriate in his sole and absolute discretion.[2]

In 2009, Sage|Kotter generated revenues almost triple what Kotter Associates had generated the previous year, increasing from $2.8 million to over $7 million. The majority of revenue came from consulting fees, such as a

---

[2] This agreement is undated but includes a footer dated January 5, 2009.

contract between Sage|Kotter and Westinghouse Electric Company for $1 million, which Green signed as "President and CEO [chief executive officer]" of Sage|Kotter.

Claiming that Green usurped a business opportunity and committed breaches of contract, fiduciary duties, and good faith by pursuing his personal interest in Sage|Kotter without their consent, Worman and Van Alstine commenced separate legal actions against Green. In April 2009, Worman filed an arbitration demand and complaint against Green under the terms of the Sage Group's LLC agreement. Van Alstine, not a member of Sage Group LLC, later filed a separate lawsuit in King County Superior Court. The same counsel represented Worman and Van Alstine in their respective actions, and they coordinated discovery. Van Alstine and Worman sought damages, disgorgement, and imposition of a constructive trust "for all property, profits, and/or benefits derived by Green related to Sage|Kotter and/or Green's interest therein."

The Kotters learned in late spring 2009 about the arbitration demand. They had some discussions with Green and his attorney around the time of a failed mediation in October 2009. Sage|Kotter paid some of Green's legal fees. The Kotters learned of Van Alstine's lawsuit in late fall 2009.

In a December 7, 2009, letter, the Kotters' attorney told counsel for Green and counsel for Worman and Van Alstine that the Kotters "will not allow the internal dispute between your clients to disrupt the business operations of Sage|Kotter or divert the attention of our clients or its employees from carrying out the goals that led to its formation":

> Accordingly, this is to advise your respective clients that unless the present dispute between your clients is resolved in a manner satisfactory to our clients on or before December 21, 2009, our clients intend to exercise their rights under the Sage|Kotter Operating Agreement, dissolve Sage|Kotter and immediately commence to wind up its affairs.

Green and Worman did not resolve their dispute. Van Alstine's lawsuit against Green continued.

On January 6, 2010, Green and the Kotters signed a "Settlement Agreement and Mutual Releases." It had the stated purposes of effecting the orderly liquidation of Sage|Kotter and settling all actual and potential claims between the Kotters and Green. The agreement terminated Green's employment as CEO of Sage|Kotter. Green received $150,000 as a "settlement payment" and an additional $160,889 in liquidated distributions in proportion to his 38 percent interest. The Kotters also received liquidated distributions, and

Kotter Associates Inc. received the remaining assets and obligations.[3] The agreement included a broad mutual release of Sage|Kotter-related claims.

In July 2010, arbitrator Judge Robert Alsdorf (retired) heard Worman's arbitration action. Worman requested an award of almost $5 million, his calculation of half the value of Green's 38 percent equity interest in Sage|Kotter.

The arbitrator found that because "[t]he evidence overwhelmingly supports the conclusion" that Green breached contract and/or fiduciary duties by his self-dealing, Worman was entitled to damages and other relief. This conclusion was "bolstered by a strong showing of spoliation of hard copy and electronic records that had been in Mr. Green's possession, custody, and control." Judge Alsdorf characterized Green's testimony as "unclear" and lacking credibility and the Kotters' testimony as "credible."

However, the arbitrator rejected Worman's proposed valuation of Green's interest, noting that "[t]he projections on which claimants and their expert purported to establish a value were not factually sound and were at best speculative." Judge Alsdorf concluded that because of the Kotters' contractual authority to unilaterally dissolve Sage|Kotter and Kotter's absolute control over his intellectual property, Green's interest in the company was essentially

---

[3] The Kotters later changed the name of the company to Kotter International Inc.

"terminable at will," and a reasonable buyer would have been "extremely unlikely to pay more than a nominal premium" for it.

The arbitrator concluded that "the only reasonable measure of damages is not a business valuation *per se* but a requirement that [Green] disgorge 50% of the value he in fact received in 2009 for the business opportunity that he had wrongfully taken at the end of 2008." Judge Alsdorf awarded Worman $522,883.00 in damages: the sum of $413,562.50 (half of the 2009 benefits and compensation Sage|Kotter paid Green), $34,320.50 (half of Green's compensation for the last two months of 2008), and $75,000.00 (half of Green's "settlement payment"). Judge Alsdorf also granted declaratory relief, ordering a "required sales event" under the terms of the Sage Group's LLC agreement and terminating Green's status and rights of control or participation as a manager in the Sage Group. In September 2010, Judge Alsdorf awarded Worman $480,532.66 in reasonable attorney fees and costs.

Worman and Van Alstine consolidated discovery in the arbitration with discovery in Van Alstine's state court action. Van Alstine's action settled before trial, in May 2011.

In August 2011, Worman and Van Alstine filed an amended complaint against the Kotters and their business entities, alleging conspiracy, fraudulent transfer, aiding and abetting breach of fiduciary duty, and unjust enrichment.

They requested, among other things, imposition of a constructive trust over Green's 38 percent equity or membership interest in the Kotter business entities.

Over the next two years of litigation, Worman and Van Alstine filed a motion to dismiss Kotter's counterclaims and four motions for summary judgment. The trial court denied all the motions.

On November 27, 2013, the trial court granted the Kotters' motion for summary judgment, ruling that Worman and Van Alstine were collaterally estopped from pursuing a constructive trust remedy over Green's 38 percent interest in Sage|Kotter. On January 21, 2014, the trial court entered a final judgment.

Sage Group, Worman, and Van Alstine appeal.

### STANDARD OF REVIEW

This court reviews a trial court's order on summary judgment de novo, performing the same inquiry as the trial court and drawing all inferences in favor of the nonmoving party.[4] CR 56(c) requires summary judgment when the pleadings, affidavits, depositions, and admissions on file demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.

---

[4] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

ANALYSIS

Collateral Estoppel

Sage Group asserts that collateral estoppel does not bar its claims for constructive trust. Collateral estoppel, or issue preclusion, prohibits a party from relitigating issues in a subsequent proceeding, even when it asserts different claims or causes of action.[5] "The purpose of the doctrine is to promote the policy of ending disputes."[6] Collateral estoppel precludes only those issues that have actually been litigated and necessarily determined in the earlier proceeding.[7] And the party against whom collateral estoppel is asserted must have had a "full and fair opportunity to litigate the issue in the earlier proceeding."[8] A party asserting collateral estoppel must show that (1) the issue in both actions is identical; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) applying collateral estoppel does not work an injustice on the party precluded from litigating the issue.[9]

---

[5] Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 306, 96 P.3d 957 (2004) (quoting Rains v. State, 100 Wn.2d 660, 665, 674 P.2d 165 (1983)).

[6] Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wn.2d 255, 262, 956 P.2d 312 (1998).

[7] Christensen, 152 Wn.2d at 307 (citing Shoemaker v. City of Bremerton, 109 Wn.2d 504, 507, 745 P.2d 858 (1987)).

[8] Christensen, 152 Wn.2d at 307 (citing Nielson, 135 Wn.2d at 264-65).

[9] World Wide Video of Wash., Inc. v. City of Spokane, 125 Wn. App. 289, 305, 103 P.3d 1265 (2005) (quoting Christensen, 152 Wn.2d at 307).

-11-

First, Sage Group argues that the issues in both actions are not identical: "The issue of valuation was neither identical to the issues in the arbitration, nor was it necessarily determined in the arbitration." Sage Group contends that because the value of Green's interest was not an element of the disgorgement remedy, findings about that value were not "'necessarily determined' and are, at most, evidentiary facts to which collateral estoppel does not apply." Sage Group also maintains that because a court may impose a constructive trust in specie, "the value of Green's interest, even if 'speculative,' is not material to enforcement."

Sage Group correctly notes that collateral estoppel applies to "ultimate facts," or facts "directly at issue in the first controversy upon which the claim rests" but does not apply to "evidentiary facts, facts which may be in controversy in the first action and are proven but which are merely collateral to the claim asserted."[10] But as the trial court stated in its order, "While the parties in this case give different labels to the remedies sought, in the Alsdorf Arbitration and this case, one of the central damages issue[s] in each has been to determine the value of Green's interest in Sage|Kotter." Thus, the "ultimate facts" in both the arbitration and Sage Group's lawsuit against the Kotters involved the valuation of Green's 38 percent interest in Sage|Kotter. We agree with the trial court that for

---

[10] Beagles v. Seattle-First Nat'l Bank, 25 Wn. App. 925, 930-31, 610 P.2d 962 (1980).

purposes of collateral estoppel, "[t]he remedy issue to be decided here is identical to the issue that Judge Alsdorf decided."[11]

Sage Group also contends that because Van Alstine could not have been joined as a party to the arbitration, Kotter cannot establish privity. We disagree.

One must show more than representation by the same counsel to establish privity for purposes of issue preclusion.[12] But as the trial court noted, counsel for Worman and Van Alstine consolidated discovery in both cases, and "[d]iscovery from one case was used in the other and pleadings in each referenced the other proceeding. In fact, Judge Alsdorf referenced the Superior Court discovery proceedings in his pretrial Arbitration Orders." Van Alstine, pursuing claims in a parallel proceeding relating to the same issue, "exercised control" via the same attorneys, same discovery, and same legal theories, and was thus "virtually represented" in the arbitration, the resolution of which would directly affect his own superior court claims.[13] Thus, due to Van Alstine's

---

[11] As for the second element of collateral estoppel claim, the parties do not dispute that the arbitration represented a final judgment on the merits. See also Neff v. Allstate Ins. Co., 70 Wn. App. 796, 799-800, 855 P.2d 1223 (1993) (for purposes of collateral estoppel, arbitration may be "prior adjudication" ending in a final judgment).

[12] Collins v. E.T. DuPont de Nemours & Co., 34 F.3d 172, 178 (3d Cir. 1994).

[13] Collins, 34 F.3d at 178; see also Carson Inv. Co. v. Anaconda Copper Mining Co., 26 F.2d 651, 657 (9th Cir. 1928) (privity established where counsel for both parties conferred and participated together in preparation of trial on issues, parties had right to exercise joint control over litigation and cooperated in both proceedings); Everett v. Abbey, 108 Wn. App. 521, 532-33, 31 P.3d 721

preexisting legal relationship to Worman, the trial court fairly concluded that "'they represent the same legal right.'"[14] We agree that the parties were in privity for purposes of collateral estoppel.

Finally, Sage Group argues that barring its claims on the basis of collateral estoppel works an injustice because Sage Group did not have an "'unencumbered' opportunity to litigate [its] claim in the earlier action." Sage Group bases this argument on the arbitrator's finding of a "strong showing" of Green's spoliation of hard copy and electronic evidence and on allegations that the Kotters "withheld discoverable evidence from the Arbitration," producing it for the first time in this action.

To decide if application of collateral estoppel will work an injustice, "'Washington courts focus on whether the parties to the earlier proceeding had a full and fair hearing on the issue.'"[15] If a party might receive procedural opportunities in a later action that were unavailable in the first and could

---

(2001) (collateral estoppel did not apply where parties were not represented by counsel and did not control any part of proceedings); Paradise Orchards Gen. P'ship v. Fearing, 122 Wn. App. 507, 515-16, 94 P.3d 372 (2004) (no privity where party had no opportunity to argue theory of case in first proceeding).

[14] Collins, 34 F.3d at 177 (quoting E.I.B. v. J.R.B., 259 N.J. Super. 99, 102, 611 A.2d 662 (1992) (privity in claim preclusion context)).

[15] State Farm Fire & Cas. Co. v. Ford Motor Co., 186 Wn. App. 715, 725, 346 P.3d 771 (2015) (internal quotation marks omitted) (quoting Hadley v. Maxwell, 144 Wn.2d 306, 311, 27 P.3d 600 (2001)). Appellants cite State Farm in a statement of additional authorities.

reasonably cause a different result, application of collateral estoppel would be unjust.[16]

Applying collateral estoppel does not work an injustice here. Contrary to Sage Group's claims, the spoliated records were not "key evidence." Their omission did not prevent procedural fairness. These records pertained to Green's "substantially changed focus and motivation" leading to his self-dealing and breaches of contract and fiduciary duty, which were not in dispute. They did not relate to the value of Green's interest in Sage|Kotter or to damages. Moreover, as the trial court noted, the matter of Green's spoliation "was known and litigated during the Arbitration, and the documents and their destruction was a major reason why Judge Alsdorf found Green incredible on issues of liability."

Sage Group also argues that collateral estoppel works an injustice because the Kotters wrongly withheld discoverable evidence: the written "Member Services Agreement" through which Kotter licensed his intellectual property to Sage|Kotter. This written agreement contradicts Kotter's testimony in the arbitration that he orally licensed the intellectual property.

---

[16] Parklane Hosiery Co. v. Shore, 439 U.S. 322, 332, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979); State Farm, 186 Wn. App. at 725; see also Frese v. Snohomish County, 129 Wn. App. 659, 664-66, 120 P.3d 89 (2005) (collateral estoppel did not bar plaintiffs' action where new evidence presented in second action would likely have changed result in first).

Sage Group does not show any lack of fairness. First, Sage Group does not show it was deprived of any procedural opportunities. As the trial court noted, both Worman and Van Alstine conducted and shared discovery. Judge Alsdorf granted in part Worman's motion to compel discovery of certain Sage|Kotter financial documents. Where the arbitrator reserved ruling, Worman could have shown good cause or moved to compel the production of other records but chose not to do so. Second, the member services agreement supports the conclusion Judge Alsdorf reached without it. Consistent with the Sage|Kotter operating agreement, the member services agreement provided for "voluntary termination" by Kotter. Because the exceptionally "one-sided business agreement" already allowed Kotter to unilaterally dissolve the LLC and revoke any license to his intellectual property, the trial court concluded that there was no reasonable likelihood that production of the written member services agreement before arbitration would have caused a different result: "The Arbitration was procedurally fair and the documents later disclosed would not reasonably have changed the outcome."

Because the essential factual basis of the constructive trust claim was resolved against Worman in the arbitration, Van Alstine was in privity with Worman, and the arbitration was procedurally fair, the trial court did not err in concluding that collateral estoppel barred Sage Group's constructive trust claims.

Constructive Trust and Successor Liability

Nor did the trial court err by denying Sage Group's motion for summary judgment for constructive trust and successor liability. "A constructive trust is an equitable remedy which arises when the person holding title to property has an equitable duty to convey it to another on the grounds that they would be unjustly enriched if permitted to retain it."[17] Where a fiduciary transfers property subject to a constructive trust, the transferee holds the property subject to a constructive trust unless the transferee is a bona fide purchaser who paid valuable consideration and took without notice of the transferor's violation of duty.[18] A party requesting the imposition of a constructive trust must show the trust arose from the relationship of the parties involved and that the property justly belongs to that party.[19]

Sage Group argues that because the Kotters dissolved and transferred the assets of Sage|Kotter, the arbitrator was unable to impose a constructive trust and thus "unable to award a complete remedy for Green's breach." And because the Kotters and Kotter International acquired Green's 38 percent ownership interest "without consideration and with notice of the Wormans' pending claims," Sage Group contends, "[they] took it subject to a constructive

---

[17] City of Lakewood v. Pierce County, 144 Wn.2d 118, 126, 30 P.3d 446 (2001).
[18] Hesthagen v. Harby, 78 Wn.2d 934, 945-46, 481 P.2d 438 (1971).
[19] City of Lakewood, 144 Wn.2d at 129.

trust as a matter of law," from which Sage Group is entitled to "a complete remedy for Green's fiduciary breaches."

Sage Group does not show any entitlement to a constructive trust. First, Sage Group does not establish that the Kotters owed them any duty. It was Green who owed and breached fiduciary duties to Worman and Van Alstine, and their interest in Sage|Kotter was limited to his interest. Second, because of the Kotters' extraordinary authority under the LLC agreement, Green's 38 percent ownership interest had little or no value, and the Kotters did nothing improper by exercising their authority to dissolve Sage|Kotter. Therefore, the Kotters were not unjustly enriched by the termination of Sage|Kotter so as to justify the imposition of a constructive trust. Finally, Sage Group had no relationship with the Kotters and cannot show that any Kotter property rightfully belongs to them.

Sage Group cites no authority supporting its claim that a court properly imposes a constructive trust over property that has no value. As the arbitrator noted, the Kotters did not "transfer" any continuing business interest of Green's. Rather, they terminated and liquidated his interest in consideration of $150,000 they paid "in settlement of any and all possible interests, claims, differences or disputes between the Greens and the Kotter Parties, of any kind or nature," plus a liquidated distribution of Sage|Kotter assets proportionate to Green's interest. Both the arbitrator and the trial court found that because of the remarkable

degree of power Kotter maintained over the company and the one-sided nature of the operating agreement, Green's interest remained "nominal" in value and "terminable at will," and that the Kotters did in fact terminate it. Judge Alsdorf concluded that under the facts of this case, no property rightfully belonging to Sage Group existed over which to impose a constructive trust:

> Had Sage|Kotter continued to exist, or had it been established that Sage|Kotter was to be recreated and Mr. Green restored to ownership, a continuing or constructive trust could have been imposed on any present and/or future interest as requested. As it was, however, the final preponderance of the evidence was not only that the Kotters themselves had divested Mr. Green of his own interest in Sage|Kotter but also that the parties' jointly hoped-for valuable business opportunity had always been more illusory than real.

Worman and Van Alstine were not co-members of Sage|Kotter to whom Kotter owed a fiduciary duty in terminating the LLC. Nor were they judgment creditors whose claims Kotter deliberately avoided in conveying the assets of Sage|Kotter to Kotter Associates Inc. Green's compensation and benefits from the business opportunity, settlement payment, and liquidated distributions were the only property to which Worman and Van Alstine had a claim, and they received the value of that property at arbitration and in settlement. No property of Green's remained by which the Kotters could be unjustly enriched. Therefore, the Sage Group identified no Kotter property over which a court could reasonably impose a constructive trust. Green, the only possible claimant to the Sage|Kotter

assets under the LLC agreement, accepted a settlement that the Sage Group did not challenge.[20]

For the same reason, Sage Group's successor liability claim also fails. Generally, a corporation that purchases the assets of another corporation does not assume the debts and liabilities of the selling corporation.[21] However, to protect the rights of creditors and minority shareholders, Washington law recognizes four "narrow exceptions" to the general rule: (1) the purchaser agrees to assume liability, (2) the purchase is a de facto merger or consolidation, (3) the purchaser is a "mere continuation" of the seller, or (4) the transfer of assets is for the fraudulent purpose of escaping liability.[22]

Sage Group argues that the third exception applies here, alleging that Kotter International is a "mere continuation" of Sage|Kotter and should not escape liability for Green's 38 percent interest. But the settlement and mutual release liquidated and terminated Green's interest, whether identified in specie or in dollars. Sage Group could and did rightfully assert claims against the property Green received at dissolution, but Kotter International assumed no liability based on those claims. The trial court did not err by denying Sage Group's motions for summary judgment on constructive trust and successor liability.

---

[20] The Kotters argue, "If anything, Green is the one who was unjustly enriched," and Worman and Van Alstine benefited from his unjust enrichment.

[21] Martin v. Abbott Labs., 102 Wn.2d 581, 609, 689 P.2d 368 (1984).

[22] Martin, 102 Wn.2d at 609.

## CONCLUSION

Because collateral estoppel bars Sage Group's constructive trust claims and the trial court correctly denied Sage Group's motions for summary judgment and successor liability, we affirm.

_Leach, J._

WE CONCUR:

_Trickey, J_    _Dwyer, J._