

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DOUGLAS FRECHIN, on behalf of himself and all others similarly situated, ) ) | No. 72750-8-I | |
| Respondent, ) | DIVISION ONE | |
| v. ) | | |
| KING COUNTY DEPARTMENT OF TRANSPORTATION, a governmental agency, ) ) ) | UNPUBLISHED OPINION FILED: May 16, 2016 | |
| Appellant. ) | | |

BECKER, J. — King County Department of Transportation (Metro) appeals an order denying summary judgment in an action brought by bus driver Douglas Frechin. This court granted discretionary review under RAP 2.3(b)(4).[1] Although the parties stipulated and the trial court certified that the order denying summary judgment involves a controlling question of law, no clearly defined legal issue has emerged. We affirm the denial of summary judgment.

---

[1] Discretionary review may be accepted when
the superior court has certified, or all the parties to the litigation
have stipulated, that the order involves a controlling question of law
as to which there is substantial ground for a difference of opinion
and that immediate review of the order may materially advance the
ultimate termination of the litigation.
RAP 2.3(b)(4).

An order denying summary judgment is reviewed de novo. Kaplan v. Nw. Mut. Life Ins. Co., 115 Wn. App. 791, 799, 65 P.3d 16 (2003), review denied, 151 Wn.2d 1037 (2004). A motion for summary judgment should be granted only if, from all evidence, reasonable persons could reach but one conclusion. Sea-Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wn.2d 800, 802, 699 P.2d 217 (1985). "The object and function of the summary judgment procedure is to avoid a useless trial; however, a trial is not useless, but is absolutely necessary where there is a genuine issue as to any material fact." Balise v. Underwood, 62 Wn.2d 195, 199, 381 P.2d 966 (1963). A trial is not useless if a jury properly instructed on the law could reach more than one result upon applying that law to the facts.

> Even when evidentiary facts are not disputed, a motion for summary judgment will be defeated if different inferences may be drawn from the evidence in the record as to ultimate facts (e.g. intent, knowledge, good faith, or negligence). Similarly, a motion must be denied if reasonable minds might draw different conclusions from the undisputed evidentiary facts.

Phillip A. Trautman, Motions for Summary Judgment: Their Use and Effect in Washington, 45 Wash. L. Rev. 1, 4 (1970) (footnote omitted).

The industrial welfare act protects employees from "conditions of labor which have a pernicious effect on their health." RCW 49.12.010. Until 2003, the act applied only to private employers. It was amended in 2003 to benefit public employees. McGinnis v. State, 152 Wn.2d 639, 643-44, 99 P.3d 1240 (2004). Public employees may enter into collective bargaining agreements that "specifically vary from or supersede, in part or in total, rules adopted under this chapter regarding appropriate rest and meal periods." RCW 49.12.187.

2

Frechin's employment as a bus driver has been covered at all relevant times by collective bargaining agreements between Metro and Amalgamated Transit Union Local 587. Frechin alleges that over a period of years, Metro has been violating a state labor rule that requires employers to provide 30-minute meal periods to employees when they work more than 5 consecutive hours. It is undisputed that Metro does not provide the meal periods as specified by the default rule. Metro's affirmative defense is that the 30-minute meal period rule, WAC 296-126-092, was superseded by the collective bargaining agreements as permitted by RCW 49.12.187.

Metro moved for summary judgment. The trial court denied the motion. Frechin did not cross move for summary judgment. Nevertheless, Frechin agrees with Metro that the issues can and should be decided without an actual trial.

Interlocutory review is disfavored. An appellate court can handle a case much more understandingly after final judgment than by piecemeal decisions. Maybury v. City of Seattle, 53 Wn.2d 716, 721, 336 P.2d 878 (1959). "Pretrial review of rulings confuses the functions of trial and appellate courts. A trial court finds facts and applies rules and statutes to the issues that arise in the course of a trial. An appellate court reviews those rulings for legal error and considers the harm of the alleged error in the context of its impact on the entire trial. An appellate court is not competent to review most evidentiary rulings when a trial has not yet occurred both because it does not find its own facts and because it is incapable of assessing the impact of the evidence on the whole case." Minehart

v. Morning Star Boys Ranch, Inc., 156 Wn. App. 457, 462, 232 P.3d 591, review denied, 169 Wn.2d 1029 (2010).

Washington's appellate courts "rarely grant discretionary review of trial court orders denying motions for summary judgment." Geoffrey Crooks, Discretionary Review of Trial Court Decisions Under the Washington Rules of Appellate Procedure, 61 Wash. L. Rev. 1541, 1547 (1986). The relatively recent addition of RAP 2.3(b)(4) to the standards for granting discretionary review does not signal a change in that policy. To avoid the pitfalls of premature review of a decision denying summary judgment, there should be a controlling question of law that can be analyzed without delving too deeply into the factual details of the case.

Here, the trial court entered a boilerplate finding that the dispute involves a controlling question of law. Metro and Frechin have stipulated that the applicability of RCW 49.12.187 is the "threshold" issue. Obviously, RCW 49.12.187 applies in the sense that Frechin's lawsuit must be dismissed if the collective bargaining agreement at issue specifically varies from or supersedes the state labor rule concerning meal periods. Whether the collective bargaining agreement does so is a thornier question.

This court has previously refused to short-circuit the trial process in a similar case, Frese v. Snohomish County, 129 Wn. App. 659, 667-71, 120 P.3d 89 (2005). Frese, like this case, came up on discretionary review of an order denying the public employer's motion for summary judgment. The defendant county claimed the collective bargaining agreement specifically varied from or

superseded WAC 296-126-092. Frese, 129 Wn. App. at 668. Although the county argued that the agreement specifically contemplated meal periods, we noted that the agreement "does not specify meal break arrangements that are different from what the regulation provides." Frese, 129 Wn. App. at 669. We held that the trial court properly refused to dismiss the employees' cause of action for violations of WAC 296-126-092 and that the record was too undeveloped to grant summary judgment for either party. Frese, 129 Wn. App. at 669-70.

Here we are again asked to intervene in a complex case of contract interpretation having to do with meal periods. The agreements between Metro and Local 587 before and after 2003 use identical language to describe certain breaks to which drivers are entitled. The agreements do not expressly refer to a driver's "meal period." As in Frese, the lack of specificity in the contract language has set the stage for an employee to claim that the employer is obligated to follow the state rule.

Frechin contends that the agreements cannot "specifically vary from or supersede" the state meal period rule without referring to the rule or using a term like "meal period." Metro responds that talismanic language is not required to qualify a collective bargaining agreement under the public employee exception in RCW 49.12.187. Metro contrasts the statute's treatment of employees in the construction trades, for whom rest and meal periods of some kind must be specified in their collective bargaining agreements, with the statute's treatment of public employees, who may agree to dispense with meal periods altogether. The

trial court has not yet been asked to decide whether, in view of the statutory language, an agreement can be exempt from the state rule if it does not use the specific terms Frechin contends are necessary.

Metro contends the uncontroverted evidence shows as a matter of law that the collective bargaining agreements do vary from and supersede the state meal period rule. Metro points to contract language providing for "reasonable breaks," a "15-minute layover" in assignments over 5 hours, an additional "layover" in weekday assignments over 8 hours, and the use of other terms of art like "split" and "combo." But whether "breaks" and "layover" are terms of art that refer to meal periods presents a factual issue. For example, one witness testified that a layover is "a completely distinct concept from the provision of a meal period or a break."

Metro has submitted declarations by the lead negotiators who say they were aware of the 2003 statutory amendment. The negotiators state that they entered into the agreement with the deliberate intention of varying from or superseding the meal period rule for bus drivers. They say they agreed to "reasonable breaks" and a "15-minute layover" for drivers, as opposed to meal breaks on a fixed schedule, to avoid the practical difficulties of having drivers stop to eat mid-route and also to accommodate drivers' historical preference for straight shifts. Frechin counters that the declarations of the negotiators are inadmissible because they represent only the unexpressed subjective intent of the parties.

The trial court has not yet been asked to rule on the admissibility of the negotiators' testimony. At this stage, we cannot determine as a matter of law if the testimony is admissible; if it is, whether there may be competing inferences to be drawn from their testimony and whether any error that might be committed in admitting their testimony would be harmless in light of other evidence or rulings.

For example, the record also contains bargaining notes, which may or may not be admissible as extrinsic evidence of contractual intent. The bargaining notes discuss a proposal to increase "layovers" from 15 minutes to 30 minutes because "we are entitled to . . . *30* minutes every five hours of work" under the state regulation. At one point, Local 587 proposed language requiring Metro to adjust the schedules if the available data showed there was "insufficient layover or guaranteed meal break layover time." But neither of these proposals was incorporated into the final agreement. A reasonable fact finder could read the notes as evidence of a deliberate decision to supersede the state rule or, on the other hand, could take the absence of an express reference to "meal periods" as evidence of a deliberate decision not to supersede the state rule.

The agreement specifically provides meal breaks for some nondriving employees. Metro contends the variation in treatment between drivers and nondrivers necessarily implies a deliberate choice to vary from or supersede the state rule just for drivers. Perhaps. But it appears from the record that these provisions were the same in the pre-2003 agreements as they were in the agreements adopted after the statutory amendment. Again, this is one aspect of the agreement that a finder of fact might or might not find convincing.

7

In discerning the parties' intent, the reasonableness of the parties' respective interpretations may be a factor in interpreting a written contract. Berg v. Hudesman, 115 Wn.2d 657, 668, 801 P.2d 222 (1990); 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 301.05, at 204 (6th ed. 2012). Metro contends it is not reasonable to interpret the collective bargaining agreement as leaving the drivers entitled to fixed meal periods under the state rule. The president of Local 587 agreed with Metro when explaining in a deposition why he does not support Frechin's lawsuit:

> Metro has historically provided work shifts that are paid straight through, from beginning to end, and I believe—and I believe the position of 587 has long been that we do not want an unpaid period of time in our work schedule. There is Reason No. 1.
> No. 2, I have worked in transit for going on 30 years in a number of capacities. I understand how the bus system works, and I know the degree of harm it would cause Metro if it had to find a way to either park its buses for 30 minutes somewhere to provide that break or relieve the employees of their duties for 30 minutes if they were to swap drivers out.
> I don't believe either of those things would be in the benefit of Metro or the huge majority of my represented members.

Whether this testimony would be admissible is another ruling the trial court has not yet made. Assuming it is admissible, we cannot say Frechin's position is unreasonable as a matter of law. The reasonableness of the parties' competing interpretations is better suited for resolution by a finder of fact.

The scheduling system allows drivers with seniority to choose a straight run without a layover if that is what they prefer. Metro's last argument is that the drivers' individual selections of their preferred schedules are "mutually agreed to employment agreements" under RCW 49.12.187 that specifically vary from or supersede the state rule. The trial court did not err in rejecting this argument as

8

a basis for granting summary judgment to Metro. Metro does not satisfactorily explain how the individual shift selections can be regarded as separate employment agreements between Metro and individual drivers when the union is by contract the sole bargaining agent for the drivers.

In summary, the trial court did not err in denying Metro's motion for summary judgment. There are genuine issues of material fact about the intent of the collective bargaining agreement. Pattern jury instructions provide a framework for how to go to trial on a dispute involving contract interpretation. The case cannot be tried before the Court of Appeals. Litigants should look to interlocutory review to clarify their litigation only "in those rare instances where the alleged error is reasonably certain and its impact on the trial manifest." Minehart, 156 Wn. App. at 462. This is not such a case. The alleged error—the trial court's denial of Metro's motion for summary judgment—is not reasonably certain. It is unclear that a properly instructed jury would necessarily find that the post-2003 agreements specifically vary from or supersede the state meal period rule. We agree with the trial court's judgment that further proceedings are necessary.

The order denying summary judgment is affirmed.

Becker, J.

WE CONCUR:

Trickey, ACJ

9