# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

OSCAR MENDOZA, individually and as
class representative,

Appellant,

v.

EXPERT JANITORIAL SERVICES,
LLC,

Defendant,

FRED MEYER STORES, INC.,

Respondent.

DIVISION ONE

No. 77948-6-I

PUBLISHED OPINION

FILED: October 28, 2019

DWYER, J. — A party has no ground to complain of unfairness when faced with a consequence of obtaining the relief it requested and received from the trial court. Here, having successfully obtained an order excluding Oscar Mendoza and 68 of his fellow janitors (the Mendoza janitors) from a prior class action lawsuit (Espinoza)—in which a group of janitors who worked in Fred Meyer Stores, Inc. retail facilities throughout the Puget Sound area sought to recover damages for violations of Washington's Minimum Wage Act (MWA), chapter 49.46 RCW—Fred Meyer nevertheless seeks to avoid the consequences of its choice by barring the Mendoza janitors from pursuing this separate lawsuit.

Accepting Fred Meyer's contention that the Mendoza janitors were virtually represented by the efforts of the class in Espinoza from which they were

excluded, the trial court herein ruled that the Mendoza janitors were collaterally estopped from bringing their claims under the MWA against Fred Meyer. Because the Mendoza janitors attempted to join but were, at Fred Meyer's urging, excluded by court order from the class in Espinoza, we hold both that the doctrine of virtual representation is not applicable to the Mendoza janitors and that application of collateral estoppel herein works an injustice. Fred Meyer must accept the consequences of its decision to successfully seek the exclusion of the Mendoza janitors from the Espinoza lawsuit. Accordingly, we reverse.

I

In Espinoza, a group of janitors who worked in Fred Meyer stores in the Puget Sound area between September 2011 and September 2014 filed suit alleging violations of the MWA by All American Janitorial LLC (AAJ), M.H. Janitorial LLC (MHJ), Expert Janitorial Services, LLC (Expert), and Fred Meyer. Fred Meyer contracted out its janitorial work to Expert who—in turn— subcontracted the work to AAJ and MHJ, who directly employed the Espinoza janitors.

In September 2015, after the Espinoza lawsuit was instituted but prior to the certification of the Espinoza class, Expert sent putative class members settlement agreements that offered compensation to those who released their claims against Expert and Fred Meyer. The Mendoza janitors are those who were a part of the putative class but accepted these settlement offers. Later, five of the Mendoza janitors submitted declarations in support of a request for relief

2

seeking to include all of the Mendoza janitors as part of the class in Espinoza.[1]

At the urging of Expert and Fred Meyer, the trial court, in its order certifying the class in Espinoza, excluded the Mendoza janitors because none of the class representatives had signed the proffered 2015 agreement and the trial court was concerned that their interests could conflict with the Mendoza janitors' interests. The Mendoza janitors subsequently filed this lawsuit in August 2016, asserting many claims identical to those in Espinoza, but also including allegations relating to the validity of the 2015 settlement agreements.

The Espinoza lawsuit was tried in January and February 2017. Following trial, the trial court concluded that AAJ, MHJ, and Expert were liable for violations of the MWA. It also ruled that Fred Meyer was not the Espinoza janitors' joint employer under the MWA and was therefore not liable to the janitors.

Shortly thereafter, the Espinoza and Mendoza janitors learned that Expert was financially unable to pay the wages owed. As a result of Expert's financial difficulties, it settled with the Espinoza and Mendoza janitors for $720,000 in a settlement approved by the trial court.

Meanwhile, in July 2017, the trial court herein certified the class of Mendoza janitors. Fred Meyer then moved for summary judgment, asserting that the Mendoza janitors should be collaterally estopped—by the Espinoza ruling that Fred Meyer was not the janitors' joint employer under the MWA—from bringing their claims against Fred Meyer under the MWA. The trial court agreed, concluding that the Mendoza janitors were collaterally estopped on the issue of

---

[1] Another six of the janitors who signed settlements in 2015 submitted declarations on behalf of Expert opposing their inclusion in the class.

Fred Meyer's status as a joint employer under a theory of virtual representation. The Mendoza janitors appeal from the order dismissing their claims.

II

The Mendoza janitors contend that the trial court erred by dismissing their claims against Fred Meyer on summary judgment. This is so, the Mendoza janitors assert, because the trial court incorrectly concluded that collateral estoppel barred their MWA claims against Fred Meyer. According to the Mendoza janitors, the application of collateral estoppel to them was improper because they were not parties to, nor in privity with parties to, the Espinoza lawsuit, and because application of the equitable doctrine would work an injustice. We agree.

A

We review de novo a trial court's grant of summary judgment. Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 767, 436 P.3d 397, review denied, 193 Wn.2d 1023 (2019). We affirm an order granting summary judgment only "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Woods View II, LLC v. Kitsap County, 188 Wn. App. 1, 18, 352 P.3d 807 (2015). On review, we "conduct the same inquiry as the trial court and view all facts and their reasonable inferences in the light most favorable to the nonmoving party." Greensun Grp., 7 Wn. App. 2d at 767 (citing Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 350, 144 P.3d 276 (2006)).

The doctrine of collateral estoppel applies when the following four factors are present: "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied." Malland v. Dep't of Ret. Sys., 103 Wn.2d 484, 489, 694 P.2d 16 (1985). "Whether collateral estoppel applies to preclude relitigation of an issue is a question of law that we review de novo." Lemond v. Dep't of Licensing, 143 Wn. App. 797, 803, 180 P.3d 829 (2008) (citing State v. Vasquez, 109 Wn. App. 310, 314, 34 P.3d 1255 (2001)); accord Weaver v. City of Everett, No. 96189-1, slip op at 6 (Wash. Oct. 17, 2019), http://www.courts.wa.gov/opinions/pdf/961891.pdf.

B

The Mendoza janitors first contend that they were not parties to, nor were they in privity with parties to, the Espinoza lawsuit such that they should be collaterally estopped from asserting that Fred Meyer is their joint employer under the MWA. Fred Meyer concedes that the Mendoza janitors were not actual parties to the Espinoza lawsuit, but asserts that they nevertheless satisfy the party or party in privity requirement under the virtual representation doctrine. In response, the Mendoza janitors assert that (1) the virtual representation doctrine is not applicable in the class action context when the party against whom the doctrine is applied attempted to join but was denied membership in the prior class action lawsuit, and (2) even if the doctrine was generally applicable to such cases it does not support the application of collateral estoppel to the Mendoza

5

janitors' claims.

Under Washington law, the virtual representation doctrine provides an exception to the collateral estoppel "requirement that one be a party or in privity with a party to the prior litigation." Hackler v. Hackler, 37 Wn. App. 791, 795, 683 P.2d 241 (1984); accord Bacon v. Gardner, 38 Wn.2d 299, 229 P.2d 523 (1951); Briggs v. Madison, 195 Wash. 612, 82 P.2d 113 (1938); Howard v. Mortensen, 144 Wash. 661, 258 P. 853 (1927). This doctrine is applied cautiously so as to avoid unjustly depriving a nonparty of his or her day in court. Garcia v. Wilson, 63 Wn. App. 516, 520, 820 P.2d 964 (1991). To this end, we have previously identified four factors that courts should consider before applying the doctrine:

> (1) "whether the nonparty in some way participated in the former adjudication, for instance as a witness," (2) "[t]he issue must have been fully and fairly litigated at the former adjudication," (3) "the evidence and testimony will be identical to that presented in the former adjudication," and (4) "there must be some sense that the separation of the suits was the product of some manipulation or tactical maneuvering, such as when the nonparty knowingly decline the opportunity to intervene but presents no valid reason for doing so."

Dillon v. Seattle Deposition Reporters, LLC, 179 Wn. App. 41, 66, 316 P.3d 1119 (2014) (alteration in original) (quoting Garcia, 63 Wn. App. at 521). A court may apply the virtual representation doctrine when a sufficient number of these factors are present to ensure that application of the doctrine is fair to the party against whom collateral estoppel is sought to be applied. Garcia, 63 Wn. App. at 521.

1

The Mendoza janitors assert that the virtual representation doctrine is not

applicable to class action lawsuits. Because no Washington case authority directly addresses whether virtual representation may be applied in a case such as this to satisfy the third factor of the collateral estoppel formula, the Mendoza janitors cite to Smith v. Bayer Corp., 564 U.S. 299, 131 S. Ct. 2368, 180 L. Ed. 2d 341 (2011), in support of their position.[2]

In the cited case, the United States Supreme Court considered whether an injunction issued by a federal court barring a state court from certifying a class action lawsuit against Bayer Corp. fell within the relitigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283. Bayer Corp., 564 U.S. at 302. Two separate lawsuits were filed against Bayer Corp. seeking identical class certification to sue on behalf of West Virginia residents who purchased Baycol, an allegedly hazardous drug sold by Bayer Corp. Bayer Corp., 564 U.S. at 302-03. One of the lawsuits was removed to federal court, where the federal district court, applying Federal Rule of Civil Procedure 23, declined to certify the proposed class. Bayer Corp., 564 U.S. at 303-04. Shortly thereafter, the federal district court, at the request of Bayer Corp., issued an injunction prohibiting the West Virginia state court from certifying the class in the other lawsuit. Bayer Corp., 564 U.S. at 304.

As part of its consideration as to whether the injunction was permissible under the Anti-Injunction Act, the Court explained that, for this to be so, the

---

[2] The Mendoza janitors assert that application of the virtual representation doctrine violates procedural notice protections set forth in CR 23, see CR 23(b)(3), (c), and cite Bayer Corp. to support this argument. However, there is no dispute herein that the Mendoza class members received notice of the Espinoza lawsuit. Thus, we consider Bayer Corp. not for its specific analysis of Federal Rule of Civil Procedure 23 but, rather, for the general principles it espouses concerning who may fairly be considered a party and thus may be precluded from pursuing a separate lawsuit.

plaintiff in the state court lawsuit, Smith, "must have been a party to the federal suit, or else must fall within one of a few discrete exceptions to the general rule against binding nonparties." Bayer Corp., 564 U.S. at 308. Bayer Corp. asserted that Smith was bound by the federal district court's ruling because the federal lawsuit's primary plaintiff, McCollins, had been acting in a representative capacity for Smith and all other West Virginia residents that purchased Baycol when he sought and was denied class certification in federal court. Bayer Corp., 564 U.S. at 314-15.

The Court rejected this contention, explaining that "[t]he definition of the term 'party' can on no account be stretched so far as to cover a person like Smith, whom the plaintiff in a lawsuit was denied leave to represent." Bayer Corp., 564 U.S. at 313. The Court went on to further explain that

> Federal Rule 23 determines what is and is not a class action in federal court, where McCollins brought his suit. So in the absence of a certification under that Rule, the precondition for binding Smith was not met. Neither a proposed class action nor a rejected class action may bind nonparties.

Bayer Corp., 564 U.S. at 315.

Although the Espinoza janitors were granted class certification, Bayer Corp. supports the Mendoza janitors' contention that determinations made in a class action lawsuit cannot bind those who were, *by court order*, denied membership in the class. Here, as in Bayer Corp., we decline to stretch the definition of party so far as to cover the Mendoza janitors who were explicitly excluded from the Espinoza class *by court order*.[3]

---

[3] Fred Meyer does not provide any argument in its briefing pertaining to Bayer Corp. In its order granting summary judgment, the trial court attempted to distinguish Bayer Corp. by

2

The <u>Mendoza</u> janitors next assert that, even were we to determine that the doctrine of virtual representation could be applicable to those in the situation of the <u>Mendoza</u> janitors, the record herein does not support the trial court's conclusion that the <u>Mendoza</u> janitors were virtually represented in <u>Espinoza</u>. This is so, the <u>Mendoza</u> janitors assert, because they did not participate in the <u>Espinoza</u> litigation, the evidence and testimony that will be presented in a trial on the <u>Mendoza</u> janitors' claims will not be identical to that presented in <u>Espinoza</u>, and the <u>Mendoza</u> janitors' separate lawsuit was not the product of their manipulation or tactical maneuvering. We agree.

To illustrate the inapplicability of the virtual representation doctrine herein, we turn, for comparison, to our prior decision in <u>Garcia</u>. Therein, Garcia was a passenger in a motor vehicle being driven by her roommate Teodoro Macias when the vehicle collided with a vehicle driven by Rebecca Wilson. <u>Garcia</u>, 63 Wn. App. at 517. Both Macias and Garcia sustained injuries in the collision. <u>Garcia</u>, 63 Wn. App. at 517, 521-22.

A few months later, Macias filed a lawsuit against Wilson, seeking to recover damages for personal injuries. <u>Garcia</u>, 63 Wn. App. at 517. The suit proceeded to trial, at which Garcia testified on behalf of Macias. <u>Garcia</u>, 63 Wn.

noting that here the <u>Espinoza</u> class was actually certified, just without the <u>Mendoza</u> janitors as a part of the class. Under <u>Bayer Corp.</u>, however, the issue was not merely whether any class had been certified, but whether McCollins could be fairly said to have represented Smith given that McCollins was "denied leave to represent" Smith by court order. <u>Bayer Corp.</u>, 564 U.S. at 313. Thus, the distinction between the cases pointed to by the trial court does not, in actuality, diminish the force of the United States Supreme Court's pronouncement.

App. at 517. At the conclusion of trial, the trial court entered judgment for Wilson. Garcia, 63 Wn. App. at 517.

Subsequently, Garcia filed her own lawsuit against both Macias and Wilson, bringing an identical claim against Wilson as had been brought in Macias's lawsuit against Wilson. Garcia, 63 Wn. App. at 518. The trial court, however, dismissed Garcia's claim against Wilson on summary judgment, concluding that she was barred under the doctrine of collateral estoppel from bringing her claim. Garcia, 63 Wn. App. at 518. Garcia appealed.

On appeal, we concluded that the virtual representation doctrine applied and that the trial court had properly dismissed Garcia's claim against Wilson. Garcia, 63 Wn. App. at 522-23. We explained that Garcia had directly participated as a witness in Macias's lawsuit on Macias's behalf, was living with Macias at the time, and was, therefore, "fully aware of the character and issues of the first suit." Garcia, 63 Wn. App. at 521. It was also undisputed that all of the issues presented by Garcia's claim against Wilson had been fully and fairly litigated in Macias's lawsuit and that there would not be any difference from the first lawsuit in the evidence and witnesses presented should Garcia be permitted to pursue her claim against Wilson. Garcia, 63 Wn. App. at 521. In addition, we noted that "Garcia began seeing a doctor the day after Macias filed his complaint, leaving no other conclusion but that she was interested in the results of the trial and could have intervened in Macias's action." Garcia, 63 Wn. App. at 521-22. Furthermore, we concluded that, because Garcia "failed to demonstrate to the trial court [that] any prejudice" could have resulted had she intervened, her

10

decision not to do so "appear[ed] purely tactical. If Macias had won, Garcia would have gained a tactical advantage in pursuing her own claim." Garcia, 63 Wn. App. at 522. Thus, we concluded that Garcia could fairly be collaterally estopped, by application of the doctrine of virtual representation, from pursuing her separate lawsuit against Wilson. Garcia, 63 Wn. App. at 522-23.

Unlike in Garcia, herein the fourth factor—that the separation of the suits was the product of the Mendoza janitors' manipulation or tactical maneuvering— is notably absent. Five of the Mendoza janitors specifically sought inclusion of all the Mendoza janitors in the Espinoza class. Fred Meyer and Expert successfully opposed their inclusion, resulting in the trial court ordering that the Mendoza janitors be excluded from that litigation. The trial court's order excluding the Mendoza janitors, against their express wishes, was clearly not a tactical maneuver orchestrated by the Mendoza janitors.[4] Indeed, the Mendoza janitors' exclusion is most aptly characterized as being the result of Fred Meyer's tactical maneuvering, not that of the Mendoza janitors.

Fred Meyer now wishes to avoid the primary consequence of its opposition to the Mendoza janitors' request to be included in Espinoza—a separate lawsuit. Fred Meyer asserts that—notwithstanding their exclusion by a

---

[4] Our Supreme Court indicated its agreement with this proposition in Dean v. Lehman, 143 Wn.2d 12, 17-18 n.4, 18 P.3d 523 (2001). Therein, it declined to apply collateral estoppel to a group of inmates' spouses bringing a class action against the Department of Corrections (DOC). Dean, 143 Wn.2d at 15-16. The inmates had themselves brought claims against DOC in an earlier federal class action lawsuit. DOC sought to apply the rulings from that case to that of the inmates' spouses. Dean, 143 Wn.2d at 17-18 n.4. The Supreme Court declined to do so, noting that it would "clearly work an injustice" to apply collateral estoppel because the inmates' spouses had attempted to join the class in the federal action and had been excluded by order of the trial court. Dean, 143 Wn.2d at 17-18 n.4. The Supreme Court plainly did not view the spouses' exclusion by court order to be a tactical maneuver of the spouses.

11

court order promoted by Fred Meyer—the Mendoza janitors could have intervened in the Espinoza lawsuit at a later time to request that the trial court reconsider its ruling, chose not to do so, and that this choice was a sufficient tactical maneuver to permit application of the virtual representation doctrine. This is nonsense.

First, Fred Meyer sought the order excluding the Mendoza janitors. If, as Fred Meyer now asserts, reconsideration of that order was appropriate or necessary to avoid prejudice to Fred Meyer, then Fred Meyer should have sought reconsideration of that order. That Fred Meyer declined to do so was a tactical decision by Fred Meyer. When Fred Meyer requested the exclusion of the Mendoza janitors, it was asserting that the Mendoza janitors needed to bring any claims they had against Fred Meyer in a separate lawsuit. Fred Meyer must now accept the consequence of its tactical decision.[5]

Furthermore, the Mendoza janitors had good reason for declining to intervene in Espinoza at a later time. Both the Espinoza janitors and the Mendoza janitors are, and were at the time of the Espinoza trial, represented by the same counsel. If, as Fred Meyer urges, the Mendoza janitors were required to intervene and seek vacation of the order excluding them from the Espinoza lawsuit in order to ensure that they could ever have their day in court, it might well have created a conflict of interest for the janitors' counsel. This is so because successful intervention—at that late stage—might well have delayed

---

[5] Fred Meyer's assertion that the Mendoza janitors were obligated to do anything other than comply with the trial court's adverse ruling excluding them from the Espinoza litigation appears quite disingenuous—particularly given that no such assertion was ever raised by Fred Meyer prior to it prevailing in the Espinoza trial.

final resolution of the Espinoza janitors' claims, pitting the Mendoza janitors' interest in obtaining their day in court against the Espinoza janitors' interest in resolving their claims as expeditiously as possible. The two groups of janitors were not required to put their interests in opposition merely to relieve Fred Meyer of the consequence of its litigation strategy. Both sets of janitors were entitled to carry on with the services of their chosen attorneys.[6]

Our analysis of the remaining factors similarly distinguishes the present matter from Garcia and supports our conclusion that the doctrine of virtual representation was not properly applicable to the Mendoza janitors. Although it is undisputed that the issue of joint employment was fully litigated in Espinoza, the Mendoza janitors assert that the factors of participation in the prior lawsuit and identical evidence are not met here. The Mendoza janitors advance a sound argument.

The Mendoza janitors contend that the first factor of the virtual representation analysis weighs against application of the doctrine because most of the Mendoza janitors did not participate at all in the Espinoza litigation, and none testified at trial in support of the Espinoza janitors.[7] We agree.

---

[6] Fred Meyer asserts, and the trial court appears to have accepted, that there would not have been any delay for the Espinoza janitors or any detriment to their interests had the Mendoza janitors intervened because the trial court could have bifurcated any non-common issues between the Espinoza and Mendoza janitors to avoid any delay of the trial on the issue of joint employment. This is not at all as plain as Fred Meyer avers. Even if the trial court had bifurcated the trial, both Espinoza and Mendoza janitors would have likely had to attend and testify in multiple trials, the trial on the issue of joint employment could have been delayed if the Mendoza janitors required additional discovery, and proceeding with multiple trials could have led to multiple appeals or requests for discretionary review, all of which could have greatly extended the time to finalize any award of damages to the Espinoza janitors.

[7] This contrasts notably with Garcia, wherein Garcia herself testified at trial as a witness on behalf of Macias before subsequently bringing a separate lawsuit. 63 Wn. App. at 521.

To support their position, the Mendoza janitors cite to Frese v. Snohomish County, 129 Wn. App. 659, 120 P.3d 89 (2005). Therein, we rejected application of the doctrine of virtual representation to a group of 162 plaintiffs, in part because, "[w]hile a few of the plaintiffs presented declarations in [the prior lawsuit], most did not participate."[8] Frese, 129 Wn. App. at 665. That reasoning resonates. The only participation in Espinoza by any members of the Mendoza class consisted of 11 janitors filing declarations regarding whether they should be included in the Espinoza class—with 5 in favor of inclusion and 6 opposing inclusion—and trial testimony offered by 6 janitors on behalf of *Expert* and *Fred Meyer*.[9] This minimal participation by some of the Mendoza janitors, especially when the bulk of the participation was in support of Fred Meyer's side of the case, does not support application of the virtual representation doctrine to the Mendoza janitors as a class.

The Mendoza janitors next aver that application of the virtual representation doctrine is improper herein because the evidence and testimony in a Mendoza trial will not be identical to that presented in the Espinoza trial. This is so, they explain, because they wish to present new evidence in a trial for

---

[8] Fred Meyer asserts that we should disregard Frese because we therein noted that application of collateral estoppel was inappropriate when the respondents had failed to raise the matter before the trial court. While the Frese court did note that the respondent had failed to raise the issue below, and that such failure contributed to our decision not to apply collateral estoppel, we were also clear that the virtual representation factors, including the plaintiffs' limited participation in the prior action, did not weigh in favor of application of the virtual representation doctrine. 129 Wn. App. at 665.

[9] Fred Meyer asserts that all of the Mendoza janitors had the opportunity to testify in Espinoza and that this weighs in favor of applying the virtual representation doctrine. Fred Meyer does not cite to any case authority in support of this assertion. To the contrary, Garcia was clear that courts should consider whether "the nonparty in some way participated in the former adjudication," not whether the nonparty had the opportunity to participate but opted not to do so. 63 Wn. App. at 521.

14

the Mendoza janitors regarding Expert's financial situation that could support an inference that the janitors were economically dependent on Fred Meyer.[10] Again, we agree.

The trial court explicitly acknowledged that the evidence the Mendoza janitors wished to present at trial was not identical to the evidence presented in Espinoza, but then nevertheless concluded that the new evidence "does not warrant a *new trial* when the vast amount of evidence regarding Fred Meyer's relationship to the janitors will be identical to what was presented" in Espinoza. (Emphasis added.) This is incorrect for several reasons. First, Garcia did not state that the test is whether the evidence will be substantially similar between the two cases. Rather, the standard is whether "the evidence and testimony will be *identical*." Garcia, 63 Wn. App. at 521 (emphasis added). Second, the trial court incorrectly described the Mendoza janitors' request as a request for "a new trial," but the Mendoza janitors have never had a trial. Third, under the summary judgment standard, the Mendoza janitors were entitled to the benefit of any inferences that could be drawn from their new evidence. Evidence of Expert's financial difficulties could support an inference that the Mendoza janitors were economically dependent on Fred Meyer.[11]

---

[10] Fred Meyer asserts that, prior to the motion to dismiss, the Mendoza janitors conceded that relitigating the joint employment issue would be unnecessarily repeating a seven week trial, that they stipulated to admitting the Espinoza trial record, and that there are no material differences between the elicited testimony in Espinoza and the testimony that would be offered in a Mendoza trial pertaining to whether Fred Meyer is a joint employer. This is mostly untrue. While the Mendoza janitors did stipulate that the Espinoza trial record would be admissible and offered at a Mendoza trial, they did not agree that relitigating the joint employer issue was unnecessary or that no new evidence could be offered in a Mendoza trial pertaining to the joint employment issue.

[11] For example, because Expert indemnified Fred Meyer for lawsuits brought by janitors, Fred Meyer's legal expenses may have prevented Expert from being financially able to pay the

Additionally, the Mendoza janitors note that in Espinoza, a critical witness, a Fred Meyer manager, was too ill to take the stand during trial, resulting in the use of his deposition testimony in place of live testimony. In a Mendoza trial, the janitors will seek to have him present live testimony. This, too, would be a significant difference from the evidence and testimony presented in Espinoza.

Finally, a Mendoza trial will not include identical parties to those in the Espinoza trial because Expert has settled with the Mendoza janitors. This could result in changes to evidentiary rulings or strategy that may permit or cause different evidence to be admitted at trial.[12] Thus, there are numerous possible differences between a potential Mendoza trial and the Espinoza trial. These weigh against application of the virtual representation doctrine.

We conclude that the virtual representation factors weigh against application of the doctrine. Fred Meyer has failed to establish that the Mendoza janitors were parties, or in privity with parties, to Espinoza as required to apply the doctrine of collateral estoppel.

---

janitors. If Fred Meyer had the power to direct Expert to use those funds to pay the Mendoza janitors rather than to litigate against the janitors, it could support an inference that the Mendoza janitors were economically dependent on Fred Meyer.

Fred Meyer asserts that evidence of Expert's insolvency or other financial difficulties subsequent to the class period is irrelevant to determining whether Fred Meyer was the Mendoza janitors' joint employer during the class period because there could be many reasons for Expert's financial difficulties. Fred Meyer points to the trial court's order to support its contention. Therein the trial court noted that there were other possible business reasons why Expert was insolvent other than because it paid to indemnify Fred Meyer against janitor lawsuits. However, just because an inference could be drawn that other business reasons might explain Expert's financial situation does not mean that an inference could not be drawn that Expert's expenses indemnifying Fred Meyer prevented Expert from paying the Mendoza janitors the wages owed. On summary judgment, the Mendoza janitors are entitled to the benefit of all favorable inferences.

[12] Stipulating to the admissibility of the Espinoza trial record is not the same as stipulating to the evidentiary and other legal rulings from Espinoza.

C

The Mendoza janitors next contend that even if the doctrine of virtual representation was applicable to the janitors, application of collateral estoppel was nevertheless improper herein because it worked an injustice. This is so, the Mendoza janitors assert, because they attempted to join the Espinoza class, but the trial court ordered that they be excluded. We agree.

In support of their contention, the Mendoza janitors cite to Dean v. Lehman, 143 Wn.2d 12, 18 P.3d 523 (2001).[13] Therein, the wife of a Department of Corrections (DOC) inmate brought a class action suit against DOC challenging the validity of a statute mandating deductions from all funds received by prison inmates. Dean, 143 Wn.2d at 15-16. DOC asserted that the class should be barred from suit under the doctrine of collateral estoppel based on an earlier federal suit brought by the inmates that raised the same claims. Dean, 143 Wn.2d at 17-18 n.4. In rejecting DOC's contention, our Supreme Court noted that the wives had attempted to join the class in the federal action, but were excluded by court order. Dean, 143 Wn.2d at 17-18 n.4. The court stated that "[e]ven if the first three elements of collateral estoppel were satisfied in this case, barring the Class' claims would clearly work an injustice. The Class attempted,

---

[13] Fred Meyer contends that the Mendoza janitors did not argue that application of collateral estoppel would be unjust before the trial court and that they therefore may not raise the argument on appeal. "'But if an issue raised for the first time on appeal is arguably related to issues raised in the trial court, a court may exercise its discretion to consider newly-articulated theories for the first time on appeal.'" Mavis v. King County Pub. Hosp. No. 2, 159 Wn. App. 639, 651, 248 P.3d 558 (2011) (internal quotation marks omitted) (quoting Lunsford v. Saberhagen Holdings, Inc., 139 Wn. App. 334, 338, 160 P.3d 1089 (2007), aff'd, 166 Wn.2d 264, 208 P.3d 1092 (2009)). Here, it is clear that the issue of collateral estoppel was before the trial court, and that the trial court considered, even if only briefly, whether it would work an injustice to apply the doctrine.

but was unsuccessful, in becoming a party to the federal lawsuit." Dean, 143 Wn.2d at 17-18 n.4.

The similarities between Dean and this matter are apparent. The Mendoza janitors sought inclusion in the Espinoza class. The trial court excluded them from the class. Thus, as in Dean, it would "clearly work an injustice," 143 Wn.2d at 17-18 n.4, to apply collateral estoppel.[14]

III

The trial court erred by holding that the Mendoza janitors are collaterally estopped from bringing their claims under the MWA against Fred Meyer.[15] Accordingly, we reverse the trial court's order granting summary judgment and remand for further proceedings.

---

[14] Fred Meyer asserts that Dean does not support the Mendoza janitors' argument because the DOC inmates' wives were only excluded from the federal class action because the "court felt that the issues raised by the Class [of inmates' wives] would be significantly different from those of the inmates." Dean, 143 Wn.2d at 17-18 n.4. Thus, Fred Meyer contends that Dean stands only for the principle that it would be unjust to apply collateral estoppel to a class that was excluded *because its issues were significantly different from the class in the prior lawsuit.* However, even if this were so, the trial court herein excluded the Mendoza janitors because it considered their position to be significantly different than the Espinoza class representatives because the Mendoza janitors had signed 2015 settlement agreements.

[15] Fred Meyer contends that we may also affirm on alternative grounds not considered or ruled on by the trial court. While it is true that appellate courts have the discretion to affirm a trial court's disposition of a summary judgment motion on any basis supported by the record, we decline to exercise that discretion herein. See Potter v. Wash. State Patrol, 165 Wn.2d 67, 78, 196 P.3d 691 (2008). The absence of a sufficient record and briefing on these alternative arguments militates against analyzing, in the first instance, arguments not considered by the trial court.

Reversed and remanded.

WE CONCUR: